OPINION OF THE COURT
 

 Titone, J.
 

 In determining whether the common-law requirement of "continuity of possession” has been met in an adverse possession claim to an estate in land, a court should consider not only the adverse possessor’s physical presence on the land but also the claimant’s other acts of dominion and control over the premises that would appropriately be undertaken by owners of properties of similar character, condition and location. Thus, we conclude that plaintiffs’ occupancy of the summer cottage in a now-defunct resort town for one month during the summer, coupled with their regular efforts taken to secure and improve the premises and to eject trespassers during their absences for the 10-year statutory period while all neighboring structures collapsed due to vandalism or abandonment, satisfied the element of continuous actual possession. Accordingly, we reverse the Appellate Division order and reinstate Supreme Court’s judgment awarding plaintiffs all right, title and interest in the disputed land.
 

 The property that is the subject of this adverse possession claim is a .357-acre parcel improved with a cottage on top of Mt. Beacon in the Town of Fishkill. This improved parcel sits amidst a 156-acre site that was once a thriving resort community comprised of 21 seasonal residences, a casino, a hotel and a power plant. All of the cottage’s neighboring structures
 
 *157
 
 have since been destroyed by vandalism, fire or general neglect. Prior to 1960, all of the cottage owners occupied their parcels as lessees.
 

 Rose Ray came into possession of the subject premises pursuant to the terms of a December 1, 1906 lease that was assigned to her as lessee on January 31, 1931. Under the terms of that agreement, Ray purchased the cottage located on the property and paid rent for use of the underlying realty. The lease agreement provided that upon termination of the tenancy, any structures erected on the property would pass to the lessor, and the lessor would pay the lessee the reasonable value of the improvements. The lease also required the lessee to pay all taxes assessed upon the property. In December 1952, the lease was extended for 25 years, unless sooner terminated by the lessor.
 

 The lessor terminated the leases of all occupants of the community in 1960 pursuant to the option clause in the lease. The incline service and all utilities were terminated and all cottage owners, including Ray, were directed to remove their personal effects. In accordance with this directive, Ray removed her belongings from the cottage and departed from the premises along with all remaining residents. She died in October 1962, never having been paid the reasonable value of the cottage.
 

 In June 1963, the entire 156-acre site was purchased by Mt. Beacon Incline Lands, Inc. The contract of sale provided that all land and structures thereon were to be conveyed to the purchaser. Approximately one week after the sale in June 1963, plaintiffs — Colonel Robert L. Ray and Margaret A. Ray, the son and daughter-in-law of Rose Ray — reentered the premises formerly inhabited by Rose Ray. Thereafter, plaintiffs occupied the property for about one month per year during each summer between 1963 and 1988, which was most of Colonel Ray’s leave time from the United States Army. Plaintiffs continually paid taxes and maintained fire insurance on the parcel, installed telephone and electric service, and claimed the site as their voting residence during the period of adverse possession. Plaintiffs also took steps to prevent vandalism on the property by posting "no trespassing” signs and placing bars, shutters and padlocks on the doors and windows. On several occasions, plaintiffs apprehended vandals on the property and had them prosecuted.
 

 
 *158
 
 Defendant Beacon Hudson Mountain Corporation
 
 [1]
 
 acquired the 156-acre parcel in 1978 after the entire parcel was taken from defendant’s predecessor by Dutchess County for nonpayment of taxes. Plaintiffs continued to possess the disputed parcel after defendant Beacon Hudson acquired the property.
 

 Plaintiffs commenced this adverse possession action against defendant in 1988, alleging that from 1963 through 1988 they occupied the property in question by adverse possession under a claim of title not written
 
 (see,
 
 RPAPL 521, 522), and that they were its lawful owners. Defendant counterclaimed, seeking to eject plaintiffs from the land. Following a bench trial, and a personal visit by the court to the property, Supreme Court dismissed the counterclaim and held that plaintiffs were rightful owners of the property and entitled to an easement by prescription and right of way for ingress and egress. The court concluded that plaintiffs’ occupancy of the property was "too apparent to be overlooked,” having been "continuous and open, through more than twenty-five years of paying real estate taxes, maintaining fire insurance, repelling and arresting trespassers, claiming the site as their voting residence, maintaining the structure against the effects of wind and weather and the attacks of vandals and nailing up posters against trespassers.” The court expressly found that the parcel is bounded on all sides and set apart from neighboring property
 
 by
 
 permanent stone paths, a terraced rock garden and other prominent natural objects. The court also concluded that plaintiffs had put defendant on notice of the boundaries and limits of their claim by the "constant and conspicuous use” which "made unnecessary its inclosure in fences, walls or hedges.”
 

 The Appellate Division reversed, and declared that plaintiffs have no right, title or interest in the disputed property. The Court noted that the element of continuous possession necessary to establish title by adverse possession could be satisfied by seasonal use of property, but concluded that plaintiffs’ use for one month out of the four-month summer season was not sufficiently regular to give the owner notice of the adverse claim. We granted plaintiffs’ motion for leave to appeal, and now reverse.
 

 
 *159
 
 To acquire title to real property by adverse possession, common law requires the possessor to establish that the character of the possession is "hostile and under a claim of right, actual, open and notorious, exclusive and continuous”
 
 (Brand v Prince,
 
 35 NY2d 634, 636) for the statutory period of 10 years
 
 (see,
 
 RPAPL 501).
 
 [2]
 
 "Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period”
 
 (Brand v Prince,
 
 35 NY2d, at 636,
 
 supra).
 
 Since the acquisition of title to land by adverse possession is not favored under the law
 
 (Belotti v Bickhardt,
 
 228 NY 296, 308), these elements must be proven by clear and convincing evidence
 
 (Van Valkenburgh v Lutz,
 
 304 NY 95, 98).
 

 The element of continuity will be defeated where the adverse possessor interrupts the period of possession by abandoning the premises, where an intruder’s presence renders the possession nonexclusive, or where the record owner acts to eject the adverse possessor. However, the hostile claimant’s actual possession of the property need not be constant to satisfy the "continuity” element of the claim
 
 (Beutler v Maynard,
 
 80 AD2d 982, 983,
 
 affd
 
 56 NY2d 538).
 

 Rather, the requirement of continuous possession is satisfied when the adverse claimant’s acts of possessing the property, including periods during which the claimant exercises dominion and control over the premises or is physically present on the land
 
 (see,
 
 1 Warren’s Weed, New York Real Property, Adverse Possession, §§ 5.03, 6.01 [4th ed]), are consistent with acts of possession that ordinary owners of like properties would undertake
 
 (Miller v Rau,
 
 193 AD2d 868, 869; 1 Warren’s Weed, New York Real Property, Adverse Possession, § 5.05). In other
 
 *160
 
 words, "[t]he character of disputed property is crucial in determining what degree of control and what character of possession is required to establish adverse possession. Thus, wild and undeveloped land that is not readily susceptible to habitation, cultivation or improvement does not require the same quality of possession as residential or arable land, since the usual acts of ownership are impossible or unreasonable” (7 Powell, Real Property, Adverse Possession ¶ 1012 [2]).
 

 In fact, cultivating, improving and enclosing property are acts deemed by statute to be "possession and occupancy” of land and must additionally be proven to satisfy the statutory elements of an adverse possession claim where no written instrument describes the boundaries of the disputed property
 
 (see,
 
 RPAPL 521, 522 [1], [2];
 
 Brand v Prince,
 
 35 NY2d, at 636,
 
 supra).
 
 By their nature, regular cultivation, improvement and inclosure of another’s land constitute open and notorious acts of possession that would place record owners on notice of an adverse claim to the property
 
 (Di Leo v Pecksto Holding Corp.,
 
 304 NY 505, 512, n 1). The requisite character of the acts of improvement sufficient to supply the record owner with notice of an adverse claim will vary with "the nature and situation of the property and the uses to which it can be applied”
 
 (Ramapo Mfg. Co. v Mapes,
 
 216 NY 362, 373) and must "consist of acts such as are usual in the ordinary cultivation and improvement of similar lands by thrifty owners”
 
 (id.).
 
 Thus, the frequency and duration of such acts of improvement are to be considered in conjunction with the claimant’s other acts of dominion and control over the premises in determining whether actual possession of land has been continuous.
 

 Clearly, where the adverse claimant seeks to establish incorporeal rights in land,
 
 use
 
 or physical presence on the property is the only means of giving notice to the record owner of a hostile claim because "[o]ne does not * * * possess or occupy an easement or any other incorporeal right” in the same manner that an estate in land is possessed
 
 (Di Leo v Pecksto Holding Corp.,
 
 304 NY 505, 511,
 
 supra).
 
 Indeed, this Court has noted that "use of an easement such as a right of way, if open and continuous, provides the same assurance of notoriety and utilization as would enclosure, cultivation or improvement in the case of land itself’
 
 (id.,
 
 at 512, n 1). Thus, while the amount of seasonal
 
 use
 
 may be dispositive of a claim of continuity in a prescriptive easement case
 
 (see, Beutler v Maynard,
 
 80 AD2d 982,
 
 affd
 
 56 NY2d 538,
 
 supra; Miller v Rau,
 
 193 AD2d 868,
 
 supra),
 
 other conduct demonstrating actual possession of
 
 *161
 
 estates in land is relevant in determining whether title has been acquired by adverse possession.
 

 Here, defendant claims that plaintiffs’ possession of the property was not continuous because they were physically present there for only one month out of the summer season. However, this argument fails to take into consideration plaintiffs’ other acts of dominion and control over the premises that are indicative of their actual possession of an estate in land. Here, plaintiffs’ installation of utilities and over-all preservation of the cottage, a permanent and substantial structure, in a veritable ghost town, for the duration of the statutory period
 
 [3]
 
 demonstrates continuous, actual occupation of land by improvement (see, RPAPL 522; see
 
 also, Green v Horn,
 
 165 App Div 743, 746;
 
 cf., Van Valkenburgh v Lutz,
 
 304 NY 95, 99,
 
 supra
 
 [placing portable chicken coop on property along with other personalty and debris not occupation by improvement]). Thus, plaintiffs’ actual summertime use for a full month each season,
 
 [4]
 
 coupled with their repeated acts of repelling trespassers, improving, posting, padlocking and securing of the property in their absences throughout the statutory period, demonstrated their continuous dominion and control over, and thus possession of, the property.
 

 Indeed, this exercise of dominion and control over the premises is inconsistent with an abandonment and certainly consistent with the type of "usual acts of ownership” that would be reasonably expected to be made by owners of a summer residence in a now-defunct seasonal resort area plagued by vandals
 
 (Monnot v Murphy,
 
 207 NY 240, 245). Such seasonal presence, coupled with plaintiffs’ preservation of the premises for the statutory period of 10 years — which was made more obvious by the fact that all neighboring structures had collapsed due to vandalism and abandonment — was sufficient to place the record owner on notice of their hostile and exclusive claim of ownership
 
 (cf., Wysocki v Kugel,
 
 282 App Div 112, 114,
 
 affd
 
 307 NY 653 [dilapidated condition of buildings is indica
 
 *162
 
 tive of use by a squatter or licensee rather than by one claiming ownership]). Because defendant was clearly placed on notice of plaintiffs’ hostile claim of ownership,
 
 [5]
 
 its failure to seek plaintiffs’ ouster within the statutory period results in its disseisin.
 

 Defendant’s remaining contentions lack merit.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, Dutchess County, reinstated.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . On July 5,1995, defendant Beacon Hudson executed a deed purporting to transfer its interests in the 156-acre parcel, including the .357 acre in question, to Scenic Hudson Land Trust, Inc. On plaintiffs’ motion filed in this Court, Scenic Hudson was joined as a party defendant, and adopts the arguments of defendant Beacon Hudson.
 

 [2]
 

 . Real Property Actions and Proceedings Law article 5 establishes statutory requirements of an adverse possession claim that must be proven by clear and convincing evidence as well
 
 (Brand v Prince,
 
 35 NY2d, at 636,
 
 supra).
 
 Here, plaintiffs’ claim of right to the premises is not derived from a written instrument that describes the bounds of the property possessed, but rather is based on ancestral ownership of the cottage. Thus, RPAPL 521 and 522, which together define what constitutes adverse possession of property under a "claim of title not written,” govern here. Section 521 provides that "[w]here there has been an actual continued occupation of premises under a claim of title, exclusive of any other right, but not founded upon a written instrument or a judgment or decree, the premises so actually occupied, and no others, are deemed to have been held adversely.” Section 522 provides that land is deemed to be "possessed and occupied” within the meaning of section 521 when "usually cultivated or improved” or "protected by a substantial inclosure” (RPAPL 522 [1], [2]).
 

 [3]
 

 . Plaintiffs established that their possession of the property included the 10-year period from the date that defendant Beacon Hudson purchased the 156-acre parcel after tax sale in June 1978 to the date of the commencement of this lawsuit in August 1988. Accordingly, we do not have occasion to address whether the tax sale extinguished plaintiffs’ claims of adverse possession of the .357-acre parcel predating that sale
 
 (cf., Congregation Yetev Lev D’Satmar v County of Sullivan,
 
 59 NY2d 418, 426; RPTL 1020 [3]).
 

 [4]
 

 . We are bound by the factual finding that plaintiffs were present on the land for one full month each summer, which was aflirmed by the Appellate Division, and has record support.
 

 [5]
 

 . While the record reveals that plaintiffs continuously paid taxes on the premises, the "[p]ayment of taxes is no evidence of possession, either actual or constructive”
 
 (Archibald v New York Cent. & Hudson Riv. R. R. Co.,
 
 167 NY 574, 583). Rather, proof of tax payment has "been regarded as an act which shows a claim of title”
 
 (id.),
 
 and may also be relevant in determining whether, by such act, the adverse claimant has declined to recognize a superior title in the record owner and has thereby shown the requisite hostile nature of the possession
 
 (City of New York v Wilson & Co.,
 
 278 NY 86, 95-96).