■ FRANKE T. MOORE, Respondent, v CITY OF SARATOGA SPRINGS et al., Defendants, and HILTON TALLMAN et al., Appellants. [745 NYS2d 238] —Peters, J. Appeal from an order of the Supreme Court (Sheridan, J.), entered June 7, 2001 in Saratoga County, which, in an action pursuant to RPAPL article 15, declared that plaintiff is the title owner of certain real property.

Defendants Hilton Tallman and Joan Tallman (hereinafter collectively referred to as defendants) and plaintiff own parcels of real property on Spring Street in the City of Saratoga Springs, Saratoga County, which are separated by a 16-foot wide strip (hereinafter the gore strip) located between the easternmost boundary of plaintiff's property and the western-most boundary of defendants' property (hereinafter referred to as the Tallman property). Title to the gore strip is the subject of this action.

The Tallman property was originally a part of a larger parcel which included the gore strip. The chain of title to this larger parcel reflects several conveyances until 1977 when Marine Midland Bank foreclosed on the property. In July 1978, Marine Midland conveyed a significant portion of the foreclosed property to Edward Janulionis. That deed depicted the property as two separate parcels; one large parcel to the east of what is now the Tallman property and the Tallman property. However, since the conveyance to Janulionis did not transfer title to the gore strip, Marine Midland retained its title. The Tallman property was sold several times thereafter until Joseph Bahnatka and Dorothy Bahnatka, defendants' predecessors, took title. Although defendants had been present on the property since 1993, they did not take title to the Tallman property until February 1996.

In February 1976, plaintiff purchased several parcels of land on Spring Street; these deeds did not include the gore strip. Several months after the closing, prompted by plans to construct a commercial building, plaintiff procured a survey which ultimately depicted his property boundary as including the gore strip. Hence, during the summer of 1977, plaintiff tore down a building in the rear of his property to make room for a

parking lot. Using the gore strip as needed, his contractors squared out the property and leveled it off. When the parking lot was completed in early 1979, it was clear that it extended into a portion of the gore strip. Plaintiff testified to his maintenance of the parking lot by plowing it every winter and by removing occasional debris. He further detailed his cultivation of the remainder of the area by the planting of a lawn on the vacant portion, which was mowed continuously once the grass was established. Finally, plaintiff testified that he paid for repairs to the sidewalk on the gore strip when three slabs of concrete had to be replaced.

Exemplifying his claim to its ownership, plaintiff described an incident which occurred in late summer of 1978 when renovations were being made on the Tallman property. Upon a dispute over a contractor's trespass upon the gore strip to transport portions of a building to be placed on the Tallman property, plaintiff would only permit him access to the gore strip after securing his written release.

In 1982, plaintiff and John LeCain, owner of the Tallman property at that time, entered into a boundary line agreement, later recorded, whereby LeCain conveyed his purported interest in the gore strip to plaintiff; both acknowledged that neither had legal title. In 1987, Marine Midland conveyed the gore strip to the City of Saratoga Springs which later approached plaintiff in 1996 about purchasing a portion thereof. According to plaintiff, it was not until that time that he learned that the City may have a legal interest in the gore strip. Nonetheless, plaintiff rejected its offer because he believed that he had acquired ownership of the entire parcel.

Armed with the early survey which indicated that plaintiff had colorable title to the gore strip, the recorded boundary line agreement with LeCain in 1982 and a site plan map dated July 5, 1984 showing plaintiff's gravel lot and lawn to clearly occupy the gore strip, plaintiff commenced this action in 1997, pursuant to RPAPL article 15, to quiet title.[1] Plaintiff contended that he acquired title to the property either by way of the boundary line agreement or by adverse possession. Following a nonjury trial, Supreme Court determined that plaintiff

1. While the action was originally commenced against not only defendants but also the City of Saratoga Springs and the Adirondack Trust Company, both were no longer parties to the action as of the time of trial.

established title to the gore strip by adverse possession. Defendants appeal.[2]

Since LeCain had no interest in the gore strip at the time that the boundary line agreement was executed (*see, Terry v Chandler*, 16 NY 354, 355-356), no interest was transferred thereby. Next assessing whether title to the gore strip was acquired by adverse possession, we must find that plaintiff has shown " 'by clear and convincing evidence that for a period of 10 years [he] actually possessed the property in dispute and that such possession was open and notorious, exclusive, continuous, hostile and under a claim of right' " (*Guenther v Allen*, 268 AD2d 934, 935, *lv dismissed and denied* 94 NY2d 939, quoting *Village of Castleton-on-Hudson v Keller*, 208 AD2d 1006, 1008; *see, Shawangunk Conservancy v Fink*, 261 AD2d 692, 695; *Andersen v Mazza*, 258 AD2d 726, 727; *see also,* RPAPL 521). Where, as here, we find the more viable theory to be under a claim of title not written (*see,* RPAPL 521, 522; *Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 160; *Albright v Beesimer*, 288 AD2d 577, 578; *Mayville v Webb*, 267 AD2d 711, 712), plaintiff had to further demonstrate that the property was "usually cultivated or improved" (RPAPL 522 [1]).

Although the record evidence supports the finding of adverse possession, we find that the statutory period could not have commenced until sometime during the summer of 1979 when the parking lot was completed. From that time until at least 1989, plaintiff's actions exemplified his open, notorious and hostile claim to this parcel; he used a portion of it regularly as a parking lot which he plowed and maintained during the winter. While the remainder of the gore strip was not initially utilized, it was regularly maintained and, when later developed to a lawn area, mowed regularly, to a large extent by plaintiff. Testimony further established plaintiff's improvements to the gore strip and the adversity and hostility he displayed throughout the statutory period under a claim of right.

Contrary to defendants' assertions, we find no basis to support the contention that plaintiff acknowledged a superior right in another (*cf., Albright v Beesimer, supra* at 579; *Soukup v Nardone*, 212 AD2d 772, 774), thus defeating his claim. Instead, by the early survey and the recorded boundary line agreement, clear and convincing evidence established plaintiff's possession as hostile and under a claim of right (*see, Brand v Prince*, 35 NY2d 634)—even if wrong. His continued maintenance and use of the parcel, either as part of his parking lot or

---

2. In June 2000, during the pendency of the action, defendants acquired title to the gore strip from the City.

as a manicured boundary to his property, exemplifies his possession as open and notorious, constituting actual and constructive notice to others that he is claiming an adverse and hostile interest in this parcel. While defendants counter that his occupation could not have been under a claim of right since he acknowledged that he did not have legal title, such analysis "focuses far too much on [plaintiff's] state of mind, i.e., what [he] knew or reasonably should have known by virtue of deed descriptions, survey maps and title insurance policies that were available for [his] review" (*Birkholz v Wells*, 272 AD2d 665, 666). Emphasizing that "the element of 'hostility' need not be supported by proof of enmity or literally hostile acts * * * [when] [a]ll that is required is a showing that the possession actually infringes upon the owner's rights * * * such as to give the owner a cause of action in ejectment against the occupier throughout the requisite period" (*id.* at 667 [citations omitted]), we find all necessary factors clearly supported.

We have reviewed and rejected the remaining contentions as without merit.

Cardona, P.J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, with costs.