■ BARBARA MERGET et al., Appellants, v WESTBURY PROPERTIES, LLC, et al., Respondents. [885 NYS2d 347]—

In an action pursuant to RPAPL article 15 for a judgment declaring that the plaintiffs are the owners of certain real property by adverse possession, the plaintiffs appeal from a judgment of the Supreme Court, Nassau County (McCormack, J.), dated April 23, 2008, which, after a nonjury trial, and upon a decision of the same court entered September 7, 2007, is in favor of the defendants and against them, dismissing the complaint.

Ordered that the judgment is reversed, on the law, with costs, and it is declared that the plaintiffs are the owners of the subject property by adverse possession.

The disputed property is an undeveloped parcel of land in a residential area of Wantagh, Long Island, designated on the Nassau County Land and Tax Map as section 56, block 411, lot 410. The parcel is a "flag lot," meaning that it is accessible only through a long strip of land with a narrow, 15-foot frontage on the main road. The plaintiff Barbara Merget and the plaintiffs James Haring and Linda Haring own property bordering either side of the lot. In 2006, they commenced this action against the titled owner of the disputed lot, Westbury Properties, LLC (hereinafter Westbury Properties), and a prospective buyer of the property, Antonio Fanizzi, claiming ownership by adverse possession. Merget claimed ownership of the pole portion of the flag lot and the Harings claimed ownership of the flag portion. The plaintiffs alleged that for the requisite 10-year period they, among other things, cleared the property of debris, planted trees and shrubs, maintained the lawn and used it as part of their yards and to park their cars.

More specifically, with respect to the parties' use of the property, Megret testified at trial that in or around 1976, when the Town resurfaced the street and installed sewers and curbs, the Town, at her request, also extended the curb cut onto the subject

property so that the Mergets could continue using it to park their cars. Merget further testified that she undertook to have the subject property filled in and seeded, and eventually installed a sprinkler system on the grassy portion. She also stated that she has been paying a landscaper to mow the lawn for, at least, the last 10 years and that the landscaper also maintains the shrubs which were planted on the lot at least 20 years ago. Finally, Megret stated that in or around 1999, she paved the portion of the property which her family was using to park their cars and extended their driveway to include that section.

James Haring testified that in 1992, he "hired somebody to clean [the disputed property] up" and "immediately put about six yards of clean fill in, raked it out . . . seeded it, and . . . put up a couple of fences in the back on the south end of the yard [and] a couple of pieces of stockade." He "hired a gardener to take care of it [and] to keep it neat." Haring further testified that in 1992 he had installed a "parking cutout" on the property for an additional car. He stated that from the time he purchased his home, the defendant never cleared the subject property, never made any physical improvements to it, and never prevented Haring from changing or improving the property.

At the conclusion of the nonjury trial, the Supreme Court rendered a verdict in favor of the defendants dismissing the complaint. The court determined, inter alia, that the plaintiffs had failed to establish that their possession was hostile and under claim of right. We reverse.

In reviewing a determination of the trial court after a nonjury trial, "[t]he power of the Appellate Division . . . is as broad as that of the trial court . . . and . . . it may render the judgment it finds warranted by the facts, taking into account in a close case 'the fact that the trial judge had the advantage of seeing the witnesses' " (*Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 499 [1983], quoting *York Mtge. Corp. v Clotar Constr. Corp.,* 254 NY 128, 133-134 [1930]). Here, the evidence supports the Supreme Court's conclusion that, under the law existing at the time this claim was filed, the plaintiffs established by clear and convincing evidence that their possession of the disputed property was "usually cultivated or improved" (RPAPL former 522 [1]), actual, open and notorious, and that it was exclusive and continuous for the requisite statutory period (*see Walling v Przybylo,* 7 NY3d 228, 232 [2006]).

However, the Supreme Court erred in concluding that the plaintiffs failed to establish that their possession was hostile and under claim of right. "[A]n inference of hostile possession

or a claim of right will be drawn [where as here] the other elements of adverse possession are established, unless, prior to the vesting of title, the party in possession has admitted that title belongs to another" (*Gerlach v Russo Realty Corp.*, 264 AD2d 756, 757 [1999]). Moreover, under the law existing at the time this claim was filed, in the absence of an overt acknowledgment during the statutory period that ownership rested with another party, actual knowledge of the true owner did not destroy the element of claim of right (*see Walling v Pryzbylo*, 7 NY3d at 232; *cf.* RPAPL 501 [3], as amended by L 2008, ch 269 [eff July 7, 2008]).

The plaintiff James Haring testified that he contacted the Town of Hempstead numerous times between 1982 and 1992 to ascertain the true owners of the property in question so as to have it cleared of debris. Although in calling the town, Haring admitted that he was not the titled owner, no evidence exists that he acknowledged during the statutory 10-year period that ownership of the property rested with another person (*see Van Gorder v Masterplanned, Inc.*, 78 NY2d 1106, 1107-1108 [1991]; *Blumenfeld v DeLuca*, 24 AD3d 405, 405-406 [2005]). With respect to the plaintiff Barbara Merget, she testified that she was aware the property belonged to a third party. However, no evidence exists that she overtly acknowledged during the statutory period that ownership rested with another person. Therefore, contrary to the conclusion of our dissenting colleague, a claim of right may be inferred under the facts and circumstances of this case (*cf., Beyer v Patierno*, 29 AD3d 613 [2006]).

We also disagree with the Supreme Court's conclusion that actual awareness by Westbury Properties of the plaintiffs' infringement was necessary to prove its acquiescence. Under the law as it existed at the time this claim was filed, the plaintiffs' use of the property in question was sufficiently open and notorious so as to call upon Westbury Properties to assert its legal title (*see Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 160 [1996]; *Monnot v Murphy*, 207 NY 240, 245 [1913]; *Ward v Warren*, 82 NY 265, 268 [1880]). Skelos, J.P., Santucci and Balkin, JJ., concur.

Fisher, J., dissents, and votes to affirm the judgment appealed from, with the following memorandum: I respectfully dissent. An essential element of adverse possession is possession under a claim of right (*see Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 159 [1996]). In *Walling v Przybylo* (7 NY3d 228 [2006]), the Court of Appeals held, in effect, that even a claim of right made in bad faith is sufficient for purposes of adverse possession provided that, during the statutory period, the possessors do

not betray their bad faith by acknowledging what they know to be the true ownership of the property (7 NY3d at 233). Here, however, not only did the plaintiffs know that the subject property was not theirs, but they never claimed, either mistakenly or with an intent to deceive, that it was. Consequently, this case does not involve a bad faith claim of right; it involves no claim of right at all. Moreover, mere occupancy for an extended period of years, even when coupled with open conduct consistent with ownership, does not ripen into ownership by adverse possession absent an initial claim of right (*see Keena v Hudmor Corp.*, 37 AD3d 172, 174 [2007]; *All the Way E. Fourth St. Block Assn. v Ryan-NENA Community Health Ctr.*, 30 AD3d 182 [2006]). Clearly, then, an essential element of adverse possession—possession under a claim of right—is absent here (*see Keena v Hudmor Corp.*, 37 AD3d at 174). Additionally, in my view, the plaintiffs' express acknowledgments that they never possessed the land under any claim of right makes the majority's presumption of that essential element unjustifiable (*cf. Soukup v Nardone*, 212 AD2d 772, 774-775 [1995]). Contrary to the majority's conclusion, it is simply untenable to hold that these plaintiffs, who never claimed to own the land, may now be held to own it merely because they had the free enjoyment and use of it for the statutory period while the record owner of the property continued to pay taxes on it. To reward the plaintiffs with title would be to encourage knowing trespass in the hope, not only that it will go unpunished, but that it will ultimately be rewarded with actual ownership. The Legislature apparently agrees, having amended the law to define "claim of right" as "a reasonable basis for the belief that the property belongs to the adverse possessor or property owner, as the case may be" (RPAPL 501 [3] [L 2008, ch 269, § 1, as amended]).

Finally, the fact that the true owner did not visit the property does not, in my view, compel a different result, as it means only that the plaintiffs were able to continue to enjoy the land that they knew they did not own—and never claimed to own— without ever having their trespass challenged.