■ JOSEPH C. SILIPIGNO, Respondent, v F.R. SMITH & SONS, INC., Appellant. [896 NYS2d 261]—

Garry, J. Appeal from an order of the Supreme Court (Aulisi, J.), entered March 20, 2009 in Warren County, which partially granted plaintiff's motion for summary judgment.

In 1997, plaintiff purchased a parcel of real property located in the Town of Bolton, Warren County. The parcel is bordered on the south by Lake George and on the west by defendant's property, on which a marina has operated since approximately 1922. A narrow strip of land located along the boundary line between the parties' properties is disputed in this action. Before closing on his property, plaintiff obtained a survey indicating that the disputed parcel, which is separated from the remainder of his property by a fence, was part of the parcel that he was buying. At that time, defendant was in the process of constructing a concrete pad and two aboveground fuel tanks on a portion of the disputed parcel (hereinafter the pad area). Plaintiff was

then contacted by Frank Smith, defendant's then-president, who allegedly explained that he was aware that the pad and tanks were on plaintiff's property and that he hoped to reach an agreement with plaintiff for defendant's continued use of the disputed parcel, as he allegedly had with prior owners. Smith subsequently signed a written agreement prepared by plaintiff's counsel acknowledging that plaintiff owned the disputed parcel and providing that plaintiff would permit defendant to use it in exchange for various services to be provided by defendant, including the sale of gasoline for his boat and jet ski at a set price. Smith died in 1999 and, in 2001, defendant's vice-president sought to increase the gasoline price. Plaintiff objected, and defendant advised that it was not bound by the agreement because it had acquired title to the disputed parcel by adverse possession.

Plaintiff then commenced this action to compel the determination of claims to the disputed parcel pursuant to RPAPL article 15, alleging trespass and nuisance and seeking declaratory and injunctive relief. Defendant answered and counterclaimed, asserting that any title claimed by plaintiff had been extinguished by its adverse possession over a 50-year period. Plaintiff moved for summary judgment declaring that he was the record title owner of the disputed parcel and that any use by defendant was permissive. Supreme Court partially granted the motion with respect to the pad area. The court therefore directed the removal of the pad and tanks; the motion as to the remainder of the parcel was denied. Defendant appeals.

Plaintiff submitted deeds and surveys establishing that he is the record owner of the disputed parcel and that the concrete pad and fuel tanks encroach on his property. He also submitted, among other things, affidavits from plaintiff and his predecessor in title stating that defendant's use of the disputed parcel during their periods of ownership, from 1985 through the present, was permissive. He thus met his initial burden to establish his prima facie entitlement to judgment as a matter of law (see *Klotz v Warick*, 53 AD3d 976, 978 [2008], *lv denied* 11 NY3d 712 [2008]; *Lavine v Town of Lake Luzerne*, 296 AD2d 793, 793-794 [2002], *lv denied* 99 NY2d 501 [2002]), shifting the burden to defendant to establish the existence of material issues of fact requiring a trial (see *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Specifically, defendant was required to reveal questions of fact as to whether its "possession was hostile and under a claim of right, actual, open and notorious, exclusive and continuous for a period of 10 years" (*Gallas v Duchesne*, 268 AD2d 728,

729 [2000] [internal quotation marks, citations and brackets omitted]; see RPAPL former 521, 522; *Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 159-160 [1996]).[1] In seeking to meet this burden, defendant initially contends that Smith's acknowledgment that the disputed parcel belonged to plaintiff is irrelevant because its title ripened long before either plaintiff or his immediate predecessors in title owned the property (*see Guariglia v Blima Homes*, 89 NY2d 851, 853-854 [1996]; *City of Tonawanda v Ellicott Cr. Homeowners Assn.*, 86 AD2d 118, 123-124 [1982], *appeal dismissed* 58 NY2d 824 [1983]). Defendant further contends that since at least the 1950s, it had believed that it owned the disputed parcel, had used it to store such items as canoes, oil drums and boat racks, and had buried several underground fuel tanks partially or entirely in the disputed parcel.[2]

As defendant is not making its claim under a written instrument, it may establish title by adverse possession "only [to] that portion of the disputed premises that was cultivated, improved or protected by a substantial enclosure" (*Robinson v Robinson*, 34 AD3d 975, 976 [2006], *lv denied* 8 NY3d 805 [2007]). First, the fence separating the disputed parcel from the remainder of the property cannot satisfy the enclosure requirement because, as defendant concedes, it was not erected by defendant, but by plaintiff's predecessors in title; further, although defendant claims that another fence previously existed in the same location, there is no evidence that defendant constructed it (*see Gallas v Duchesne*, 268 AD2d at 729-730; *Yamin v Daly*, 205 AD2d 870, 872 [1994]). Second, as to defendant's alleged use of the disputed parcel for storage, even if the presence of engine parts, lumber, and other "relatively insubstantial" materials (*Campano v Scherer*, 49 AD2d 642, 643 [1975]) were found sufficient to support an adverse possession claim, there is no evidence of the exact locations where these items were stored or that they were stored in the pad area (*see id.*). Finally, defendant contends that there are material issues of fact as to whether one of the buried fuel tanks extended, in whole or in part, into the pad area. In this regard, defendant submitted the affidavits of a former employee, a fuel delivery person, and its vice-president indicating that the tanks were present for many years and describing their size, dimensions, and general loca-

---

1. The recent amendments to RPAPL article 5 are inapplicable to this action, which was commenced before the amendments took effect (*see* L 2008, ch 269).

2. All of these tanks had been filled or removed before plaintiff acquired his property, but defendant alleges that at least one of his predecessors in title was aware that there were buried tanks in the general area.

tions.[3] However, the mere fact that persons who were quite familiar with defendant's operations were aware of a tank's existence does not indicate that its invisible presence underground constituted an "open and notorious act[ ] of possession . . . sufficient to supply the record owner with notice of an adverse claim" (*Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 160 [1996] [citation omitted]; *see Robinson v Robinson*, 34 AD3d 975, 976 [2006]). Although it is alleged that each tank's presence was indicated by a capped pipe protruding above ground, it was not shown that any pipe was located in the pad area or that there was any other above-ground indication of the presence of a tank there. The orientation, size, and dimensions of a buried tank are simply not visible. Thus, defendant has not established factual issues as to whether the potential presence of an underground tank in the pad area "was somehow open and notorious as to landowners on the surface" (*City of Kingston v Knaust*, 287 AD2d 57, 61 [2001]; *see Albany Garage Co. v Munson*, 218 App Div 240, 242 [1926], *affd* 245 NY 613 [1927]). Therefore, we agree with Supreme Court that defendant has not met its burden of revealing questions of fact as to its cultivation or improvement or otherwise demonstrated open and notorious possession of the pad area, and find no reason to disturb its order.

Cardona, P.J., Peters, Spain and Stein, JJ., concur. Ordered that the order is affirmed, with costs.

---

**3.** Defendant's submissions reveal that even its long-time employees are not certain of the exact location or orientation of the tanks. At his deposition, the vice-president, who has worked for defendant since 1983, drew an approximate sketch map that placed no tanks in the pad area. He subsequently revised this placement, indicating by affidavit that, based on the tanks' size and dimensions, some part of one of them must have extended into the pad area.