Garry, J.
Appeal from an order of the Supreme Court (Zwack, J.), entered April 28, 2014 in Rensselaer County, which, among other things, denied defendants’ motion for summary judgment dismissing the complaint.
Plaintiffs and defendants own contiguous lakefront properties in the Town of Nassau, Rensselaer County. Plaintiff Catherine M. Bergmann and her now-deceased husband, Otto Bergmann, acquired plaintiffs’ property in 1971, and defendants acquired their parcel in 1976.[1] In 2010, plaintiffs commenced this action seeking, among other things, title by adverse possession to a triangular strip of lakefront property located between the parties’ parcels (hereinafter the disputed property). Defendants moved, as pertinent here, for summary judgment dismissing the complaint. Supreme Court, among other things, denied defendants’ motion and exercised its authority to search the record and award summary judgment to plaintiffs. Defendants appeal.
To establish their claim for adverse possession, plaintiffs are required to prove by clear and convincing evidence that their possession of the disputed property “[was] hostile and under a claim of right, actual, open and notorious, exclusive and continuous for the statutory period of 10 years” (Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154, 159 [1996] [internal quotation marks and citations omitted]; see Millington v Kenny & Dittrich Amherst, LLC, 124 AD3d 1108, 1109 [2015]). Additionally, where, as here, the adverse possession claim is not based upon a written instrument, the party asserting the claim “must establish that the land was ‘usually cultivated or improved’ or ‘protected by a substantial inclosure’ ” (Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012], quoting RPAPL former 522 [1], [2]; see Gallagher v Cross Hill, LLC, 45 AD3d 1013, 1013- *1194 1014 [2007]).[2] Plaintiffs’ property consists of a lakefront dwelling on a landlocked parcel that can be reached from the road only by a shared driveway on defendants’ land.[3] The disputed property lies at the end of this driveway, adjacent to plaintiffs’ front yard. Plaintiffs premise their adverse possession claim upon the assertion that they believed that the disputed property was part of their parcel when it was purchased, and they have openly and continuously used and maintained it as part of their front yard since 1971. They assert that defendants knew of their use of the disputed property and never objected or claimed that the disputed property belonged to them until defendants obtained a survey in 2009; thereafter, they sought to exclude plaintiffs. Based upon the survey, plaintiffs concede that they now realize that defendants are the record owners of the disputed property, but assert that plaintiffs’ title nevertheless vested by adverse possession in 1981, long before defendants asserted any ownership interest.
Defendants moved for summary judgment on the ground that plaintiffs cannot establish that their use of the disputed property was hostile or exclusive and, further, that they did not perform the necessary cultivation and improvements or protect the disputed property with a substantial enclosure (see RPAPL former 522 [1], [2]). As to the last contention, we agree with defendants that a metal fence located between the disputed property and defendants’ land did not satisfy the statutory requirement for an enclosure, as the testimony establishes that it was already in place when plaintiffs purchased the property (see Silipigno v F.R. Smith & Sons, Inc., 71 AD3d 1255, 1257 [2010]). As for cultivation and improvement, “[a]n adverse possession claim to seasonal property must be supported not only by seasonal presence and activities on the property, but also by other actions demonstrating continuous, actual occupation of land by improvement during absences” (Wilcox v McLean, 90 AD3d 1363, 1366 [2011] [internal quotation marks, brackets and citations omitted]). The nature of improvements sufficient to satisfy this requirement must be such that they would place the record owner on *1195 notice of an adverse claim, an analysis that varies with the nature of the property (see Ray v Beacon Hudson Mtn. Corp., 88 NY2d at 160).
The parties disagree as to whether the property may properly be deemed seasonal in nature. It is undisputed that plaintiffs primarily and consistently used their lakefront . parcel during the summertime, residing full time on the property from the end of the school year until Labor Day every year after 1971. Plaintiffs did not use or reside continuously upon their premises other than in the summer months, but they testified without contradiction that they also used the property sporadically during the rest of the year, returning on fall weekends to perform maintenance, such as mowing and raking, and to close the property for winter, and on several weekends each spring to maintain the property and open it for their summer use. Additionally, they visited the property several times each winter for maintenance and recreational activities, such as ice skating and sledding. They assert that they performed “usual acts of ownership” (Estate of Becker v Murtagh, 19 NY3d at 81) upon the disputed parcel, including parking cars there, using it for recreation, and placing a grill, lawn furniture and a picnic table there. The grill and lawn furniture were removed and stored each winter, but plaintiffs testified that they left the picnic table in place year round, using it for such purposes as cookouts and picnics both during the summer and in their off-season visits to the property. They further testified that they planted lilac bushes on the disputed property and performed maintenance, such as mowing, raking, clipping brush, shoveling snow and restoring rocks on the lakefront whenever they visited. Additionally, they testified that they cleaned and maintained an underground culvert that empties onto the lakefront; although the record does not clearly establish the location of this culvert, plaintiff Patrick Bergmann testified that it “leads under the disputed property.”
Defendants acknowledge that they saw plaintiffs maintaining the disputed property, using it for recreation and placing lawn furnishings there. Contrary to their argument, the fact that plaintiffs constructed no permanent structural improvements is not necessarily fatal to their adverse possession claim. In view of the small size of the disputed property and its nature as part of plaintiffs’ front yard, we find that plaintiffs’ acts of landscaping, maintaining and furnishing the disputed property year round and using it as a place to park their cars are similar to those ordinarily employed by owners of such property and are “consistent with the nature of the [disputed] property *1196 so as to indicate exclusive ownership” and provide notice to defendants of their adverse claim throughout the pertinent time period (Village of Castleton-On-Hudson v Keller, 208 AD2d 1006, 1008 [1994] [internal quotation marks and citation omitted]; see Goss v Trombly, 39 AD3d 1128, 1130 [2007]; Robinson v Robinson, 34 AD3d 975, 976-977 [2006], lv denied 8 NY3d 805 [2007]; Gorman v Hess, 301 AD2d 683, 684-685 [2003]). Accordingly, defendants did not meet their prima facie burden to establish that plaintiffs did not perform the requisite cultivation or improvement.
Defendants likewise failed to establish on a prima facie basis that plaintiffs’ use of the disputed property was not exclusive. In this regard, defendants acknowledge that plaintiffs used and maintained the disputed property exclusively when they were present, and that defendants never sought to use or maintain the property at such times. However, defendant Walter J. Spallane testified that he mowed the disputed property during plaintiffs’ absences in the fall and spring and that either he or a third party whom he hired plowed the shared driveway, including the part that crossed the disputed property, several times each winter to provide access to the lake for snowmobiling and ice fishing. The third party further alleged that he parked his truck on the disputed property while snowmobiling and ice fishing on the lake. Plowing for the purpose of providing recreational access to the lake and parking there while using the lake for winter sporting activities constitutes nothing more than occasional recreational use that does not defeat a showing of exclusivity (see Robinson v Robinson, 34 AD3d at 977), especially as the plowing here also necessarily involved the shared driveway located on defendants’ property. As for Spallane’s alleged maintenance of the disputed property during plaintiffs’ absences, “exclusivity is not defeated even if the true owner makes occasional forays onto the property . . . . [A] 11 that is required is possession consistent with the nature of the property so as to indicate exclusive ownership” (1-5 Warren’s Weed, New York Real Property § 5.33 [2015]). In our view, plaintiffs’ exclusive, regular use and maintenance of the disputed property during their periods of occupation were consistent with the seasonal nature of their property. The occasional maintenance that defendants allegedly performed or directed during plaintiffs’ absences — which was performed without plaintiffs’ knowledge and did not interfere in any way with plaintiffs’ possession or use of the disputed property — was insufficient to meet defendants’ prima facie burden to establish that plaintiffs’ use of the property was not exclusive (see Estate of Becker v Murtagh, 19 NY3d at 83- *1197 84; Robinson v Robinson, 34 AD3d at 977; compare McKeag v Finley, 93 AD3d 925, 927 [2012]).
We reach a different conclusion as to the required element of hostility. In this regard, defendants contend that plaintiffs used the disputed property with their permission and therefore cannot establish that the use was hostile, which is presumed when a party performs acts that usually indicate property ownership but is negated when the use is permissive (see Estate of Becker v Murtagh, 19 NY3d at 81; Quinlan v Doe, 107 AD3d 1373, 1375 [2013], lv denied 22 NY3d 854 [2013]).[4] Defendants contend that plaintiffs were aware at all times that the disputed property was part of defendants’ parcel, and were already using it with the permission of the previous owner when defendants acquired their property in 1976. Defendants assert that, at that time, they gave permission to plaintiffs to continue to do so. Defendants sought to support this claim, in part, with testimony about statements allegedly made by the previous owner, but such inadmissible hearsay cannot support a motion for summary judgment (see Pichel v Dryden Mut. Ins. Co., 117 AD3d 1267, 1271 [2014]; Ulster County, N.Y. v CSI, Inc., 95 AD3d 1634, 1636 [2012]). Likewise, defendants’ testimony about statements allegedly made by Otto Bergmann before his death cannot be used to support their motion (see CPLR 4519; Miller v Lu-Whitney, 61 AD3d 1043, 1045 [2009]). However, defendants also supported their claim that plaintiffs’ use was permissive with admissible testimony about their own statements and actions. Specifically, Spallane testified that he, defendant Rosemary E. Spallane and the previous owner met with Otto Bergmann and Catherine Bergmann in 1976 and, at this meeting, he allegedly told the Bergmanns that defendants would permit plaintiffs to continue to use the disputed property. Rosemary Spallane confirmed that this meeting occurred and that she was present. She further testified that she periodically reminded plaintiffs thereafter that defendants owned the disputed property and were allowing plaintiffs to use it, and she stated that, upon these reminders, plaintiffs would acknowledge defendants’ ownership.
Contrary to plaintiffs’ argument, defendants are not required to establish that plaintiffs affirmatively requested permission *1198 to use the disputed property in order to establish that their use was permissive. The presumption of hostility is rebutted when a possessor asks a landowner for permission to use property (see e.g. Estate of Becker v Murtagh, 19 NY3d at 82; Campano v Scherer, 49 AD2d 642, 643 [1975]), but evidence of such a request is not required in every case. On the contrary, a permissive use may arise directly from the owner’s grant of permission (see e.g. Longshore v Hoel Pond Landing, 284 AD2d 815, 816 [2001], lv denied 97 NY2d 603 [2001]), or may be implied in the absence of express permission by the parties’ actions or, as previously noted, from the cordial nature of their relationship (see e.g. Chaner v Calarco, 77 AD3d at 1218; Koudellou v Sakalis, 29 AD3d 640, 641-642 [2006]). To hold otherwise would allow a possessor to defeat the establishment of a permissive use by the simple expedient of failing to request permission, even when the owner had acted to protect his or her property rights by giving the possessor express permission to use the property.[5] Accordingly, defendants’ testimony that they told plaintiffs that the disputed property was part of defendants’ parcel, that they gave plaintiffs permission to use it, and that plaintiffs responded by acknowledging that the property belonged to defendants is sufficient to establish on a prima facie basis that plaintiffs’ use of the property was permissive and to shift the burden to plaintiffs to avoid summary judgment by establishing the existence of a triable issue of fact (see McKeag v Finley, 93 AD3d at 928).
Plaintiffs satisfied this burden by submitting testimony that directly contradicted defendants’ claim that plaintiffs were given permission to use the property. Catherine Bergmann denied that she and Otto Bergmann ever met with defendants and the previous owner to discuss ownership of the disputed property, and stated that she was never told by the previous owner or by defendants that the disputed property belonged to defendants and that defendants never asserted such ownership prior to obtaining the 2009 survey. The other plaintiffs testified accordingly, denying that defendants had made any claim of ownership or discussed ownership of the disputed parcel with them at any time before the 2009 survey, and asserting that plaintiffs had believed it to be their property until that time. This testimony is sufficient to raise issues of fact requiring credibility determinations as to whether plaintiffs’ use of the disputed property was permissive (see Harrington v Estate of Crouse, 1 AD3d 778, 779 [2003]). Accordingly, Supreme Court *1199 correctly denied defendants’ motion for summary judgment. However, because the factual issue as to whether plaintiffs used the disputed property with permission cannot be resolved without resort to assessments of credibility, the court erred in granting summary judgment to plaintiffs on the adverse possession claim, and that aspect of the order must be reversed (see CPLR 3212 [b]; see generally Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.08 [2d ed 2014]).
Peters, P.J., Lynch and Clark, JJ., concur.
Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted summary judgment to plaintiffs on their adverse possession claim, and, as so modified, affirmed.

. Catherine Bergmann and Otto Bergmann subsequently conveyed remainder interests in their property to the other plaintiffs while retaining a life estate. Likewise, defendants’ son, Walter Spallane Jr., later acquired a remainder interest in defendants’ property, and defendants retained a life estate.

. The amendments to the RPAPL that took effect in 2008 (see L 2008, ch 269) are inapplicable here, as plaintiffs claim that their title to the disputed property vested in 1981 (see Barra v Norfolk S. Ry. Co., 75 AD3d 821, 825-826 [2010]).

. Supreme Court, among other things, granted summary judgment to plaintiffs on their claim that they have an easement of necessity over this driveway. Upon appeal, defendants raise no challenge to that aspect of the court’s order, and we deem any related issues to be abandoned (see Jennings v Fisher, 258 AD2d 722, 722 n [1999]).

. Although the presumption of hostility may be rebutted and permission may be inferred from a cordial relationship of neighborly accommodation (see Chaner v Calarco, 77 AD3d 1217, 1218-1219 [2010], lv denied 16 NY3d 707 [2011]), the record does not support such a claim here. The parties agree that they did not socialize and that their relationship was distant, somewhat strained, and characterized by frequent disagreements pertaining to the shared driveway.

. To the extent that certain language in Quinlan v Doe (107 AD3d at 1375) may be read more narrowly, we reject such a restrictive interpretation.