[968 NE2d 433, 945 NYS2d 196]

ESTATE OF ROBERT E. BECKER, Deceased, Appellant, et al., Plaintiffs, v OWEN J. MURTAGH et al., Respondents.

Argued February 16, 2012; decided April 3, 2012

76

## POINTS OF COUNSEL

*Margolin & Pierce, LLP*, New York City (*Philip Pierce* and *Errol F. Margolin* of counsel), for appellant. I. The Second Department misapplied the law in such a way as to make it impossible for the standard for adverse possession to be met and in a way that conflicts with Court of Appeals' precedent and rulings in this and other departments. (*Gerlach v Russo Realty Corp.*, 264 AD2d 756; *H.S. Farrell, Inc. v Formica Constr. Co., Inc.*, 41 AD3d 652; *Hancock v Estate of Hancock*, 15 AD3d 620; *Monnot v Murphy*, 207 NY 240; *Myers v Bartholomew*, 91 NY2d 630; *Hassinger v Kline*, 91 AD2d 988; *Carman v Hewitt*, 280 App Div 866, 305 NY 718; *Robarge v Willett*, 224 AD2d 746; *Sinicropi v Town of Indian Lake*, 148 AD2d 799; *Brand v Prince*, 35 NY2d 634.) II. The Second Department decision disposes of the claim that Robert Becker had acquired the Jetty Parcel pursuant to the doctrine of practical location based on case law which in no way supports that result and is in conflict with decisions of this Court and those of the Third Department. (*Wentworth v Braun*, 78 App Div 634, 175 NY 515; *Markowski v Ferrari*, 174 AD2d 793; *Katz v Kaiser*, 154 NY 294; *Baldwin v Brown*, 16 NY 359; *Hazen v Hazen*, 26 AD3d 696; *Riggs v Benning*, 290 AD2d 716; *Konchar v Leichtman*, 35 AD2d 890; *Fisher v MacVean*, 25 AD2d 575; *Bell v Hayes*, 60 App Div 382; *Corning v Troy Iron & Nail Factory*, 44 NY 577.)

*Cahn & Cahn, LLP*, Huntington (*Daniel K. Cahn* of counsel), for respondents. I. The Appellate Division properly found that the Estate of Robert E. Becker failed to prove its claim of adverse possession to the disputed "jetty parcel" by clear and convincing evidence. (*Brand v Prince*, 35 NY2d 634; *DuMaurier v Lindsay-Bushwick Assoc., L.P.*, 39 AD3d 460; *Fitzgerald v Conroy*, 15 AD3d 534; *MAG Assoc. v SDR Realty*, 247 AD2d 516; *Guariglia v Blima Homes*, 89 NY2d 851; *Van Gorder v Masterplanned, Inc.*, 78 NY2d 1106; *Orsetti v Orsetti*, 6 AD3d 683; *Hassinger v Kline*, 91 AD2d 988; *Walling v Przybylo*, 7 NY3d 228; *Friedman v Sills*, 112 AD2d 343.) II. The boundary line between lots 29 and 30 was not established by the doctrine of practical location. (*Riggs v Benning*, 290 AD2d 716; *McMahon v Thornton*, 69 AD3d 1157; *Hazen v Hazen*, 26 AD3d 696; *Markowski v Ferrari*, 174 AD2d 793.)

### OPINION OF THE COURT

JONES, J.

The primary question before the Court is whether plaintiff Estate of Robert E. Becker (plaintiff estate) established that its

decedent acquired title to a certain parcel of land by adverse possession. We hold that it has.

## I.

This appeal stems from a dispute over the ownership of the land upon which a boardwalk and dock—constructed by Robert E. Becker (now deceased) on Oak Beach in the Town of Babylon (the Town), Suffolk County—sit. Plaintiff estate is the lessee of a beachfront lot (lot 29) on Oak Beach. Defendants are the lessees of lot 30, an adjacent beachfront lot. Plaintiffs Christopher K. O'Hara, Edward J. O'Hara and Douglas C. Koelsch lease neighboring lots (lots 14 and 15) which are situated north of (behind) lots 29 and 30, not on the beachfront. Messrs. O'Hara are lessees of lot 14, and Mr. Koelsch is the lessee of lot 15. Lots 14 and 15 are separated from the beach by the homes of plaintiff estate and defendants. The homes on all of the lots involved are privately owned, but the lots are owned by the Town, which leases the real property to the occupants pursuant to long-term leases set to expire in 2050.[1]

In the early 1960s (around 1963), the homeowners on the beachfront lots, at the Town's behest and at their own cost and expense, had wooden jetties constructed on said lots to inhibit beach erosion. The jetties appeared to be built on the lot boundary lines. Shortly after the construction of the jetty that purportedly marked the boundary line between lots 29 and 30 (within the next two years), Robert E. Becker erected a four-foot dock using the jetty for support. He later added an extension to an existing boardwalk to reach the dock.

The evidence establishes that from around 1963 until 1984, Mr. Becker exercised exclusive dominion and control over the land upon which the dock and boardwalk extension are located. In addition, during that period, Mr. Becker and defendants' predecessor Nancie Gordon, as well as other neighbors, believed those structures were located on lot 29. Throughout this period, Mr. Becker alone maintained (e.g., repaired and painted) the

---

1. The Town's ultimate ownership interest in the lots at issue is not addressed by the parties. In any event, our resolution of plaintiff estate's adverse possession claim has no bearing on the Town's interest (cf. RPAPL former 531; *Spiegel v Ferraro*, 73 NY2d 622 [1989] [use of easement by lessee of servient estate was not an assertion of an interest hostile to lessor; such use would be presumed to inure to lessor's benefit upon expiration of lessee's tenancy]).

dock and boardwalk. Further, starting in the early to mid 1960s, Mr. Becker impliedly permitted several neighbors, including the Gordons, the O'Haras and Mr. Koelsch, and their families and friends, to freely use the dock and boardwalk. However, Mr. Becker did not allow strangers access to or use of these structures. The record also shows that since the early 1960s, Nancie Gordon permitted several neighbors, including the plaintiffs' predecessors, to use her family's beach on lot 30. Mr. Becker's boardwalk was used to access the Gordon beach on lot 30.

In 1984, Nancie Gordon had her property surveyed. The survey indicated that the jetties were misaligned by approximately five feet. She averred in an affidavit that

> "[a]s a result of that survey, I learned, among other things, that a portion of the boardwalk and the entire dock that Mr. Becker had constructed some years earlier, were actually located on my property . . . I showed the survey to Mr. Becker, and he and I had a good laugh about it."

Nancie Gordon further stated that "[a]s a neighborly accommodation and because I was friendly with the Beckers, I allowed them to continue to use the boardwalk and dock as they always had, even though everybody knew that those structures were located on my property."

In 2004, Nancie Gordon sold her house on lot 30 to defendants and assigned her leasehold interest in that property to them. Defendants subsequently advised plaintiffs (Mr. Becker, Messrs. O'Hara and Mr. Koelsch) they were no longer allowed to use the boardwalk, dock or beach (on lot 30).

In March 2005, plaintiffs commenced this declaratory judgment action. Mr. Becker sought, inter alia, a judgment declaring that he established title by adverse possession to the property on which the boardwalk and dock are located. Mr. Koelsch and Messrs. O'Hara sought, inter alia, a judgment declaring that they acquired an easement by prescription for use of the boardwalk, dock and beach.

In April 2006, Supreme Court issued a preliminary injunction enjoining defendants from interfering with plaintiffs' use of the subject boardwalk, dock and beach. Subsequently, in May 2006, Mr. Becker recorded two easements with the Suffolk County Clerk by which he purported to grant to the other plaintiffs the right to use the boardwalk and dock in order to access the beach

on lot 30. In or around August 2006, defendants answered plaintiffs' complaint and interposed counterclaims seeking a judgment declaring that plaintiffs have no interest in the disputed property, a judgment voiding the easements, and damages.[2]

In March 2009, defendants moved for, among other things, summary judgment on their counterclaims. Defendants relied in part on Nancie Gordon's affidavit in which she states that before the 1984 survey, "Becker's use of the dock and boardwalk could not have been hostile to [her] interests because [she] did not even know that those structures were located on [her] property." Plaintiffs cross-moved for summary judgment on their respective adverse possession and prescriptive easement claims.

Supreme Court granted plaintiffs summary judgment. The Appellate Division, Second Department reversed, granted summary judgment to the defendants and declared that the plaintiffs had no rights in the disputed property (75 AD3d 575 [2d Dept 2010]). With respect to plaintiff estate's claims, the court held that Mr. Becker's possession was neither hostile nor exclusive because defendants' predecessors freely used the boardwalk and dock during the period of time plaintiff estate asserts its adverse possession claim ripened into title. The court, stating that there was no proof of a clear demarcation of a boundary line, also rejected plaintiff estate's claim that the doctrine of practical location of a boundary line was applicable. This Court granted plaintiff estate leave to appeal (16 NY3d 707 [2011]), and we now reverse the Appellate Division order insofar as appealed from.[3]

## II.

"Where there has been an actual continued occupation of premises under a claim of title, exclusive of any other right, but not founded upon a written instrument or a judgment or decree, the premises so actually occupied, and no others, are deemed to

---

**2.** Over the next few years, the parties engaged in a prolonged discovery dispute and extensive motion practice. In addition, Mr. Becker passed away on August 28, 2007, and the action was temporarily stayed. By stipulation, so ordered on February 1, 2008, Mr. Becker's estate was substituted as plaintiff.

**3.** The other plaintiffs' prescriptive easement claims are not before us; they did not pursue a timely appeal from the Appellate Division order.

have been held adversely" (RPAPL former 521).[4] To establish a claim of adverse possession, the occupation of the property must be (1) hostile and under a claim of right (i.e., a reasonable basis for the belief that the subject property belongs to a particular party), (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period (at least 10 years) (*see Walling v Przybylo*, 7 NY3d 228, 232 [2006]; *Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 159 [1996]; *see also Belotti v Bickhardt*, 228 NY 296, 302 [1920]). The character of the possession must be such "that [it] would give the owner a cause of action in ejectment against the occupier" (*Brand v Prince*, 35 NY2d 634, 636 [1974]). In addition, where, as here, the claim of right is not founded upon a written instrument, the party asserting title by adverse possession must establish that the land was "usually cultivated or improved" or "protected by a substantial inclosure" (RPAPL former 522). Because the acquisition of title by adverse possession is not favored under the law, these elements must be proven by clear and convincing evidence (*see Ray*, 88 NY2d at 159; *Van Valkenburgh v Lutz*, 304 NY 95, 98 [1952]). The only elements substantially in dispute here are the "hostility" and "exclusivity" elements.

A party claiming title by adverse possession "is not required to show enmity or specific acts of hostility in order to establish the element of hostility" (*Greenberg v Sutter*, 257 AD2d 646, 646 [2d Dept 1999]). This element is satisfied where an individual asserts a right to the property that is "adverse to the title owner and also in opposition to the rights of the true owner" (*Walling*, 7 NY3d at 232-233; *see Monnot v Murphy*, 207 NY 240, 245 [1913] ["The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period"]).

A rebuttable presumption of hostility arises from possession accompanied by the usual acts of ownership, and this presumption

---

4. In 2008, the adverse possession statute (RPAPL art 5) was amended in its entirety (L 2008, ch 269) to, among other things, discourage people from claiming adverse possession over real property they know belongs to another with superior ownership rights. Among the changes, the Legislature defined the terms "adverse possessor," "acquisition of title," and "claim of right" (RPAPL 501), and altered the requirements that must be made out where the adverse possession claim is not based on a written instrument (RPAPL 522). The 2008 amendments are not applicable to the instant appeal because Mr. Becker's title vested (by adverse possession), and this action was instituted, before the effective date of the amendments.

continues until the possession is shown to be subservient to the title of another (*Monnot*, 207 NY at 244; *Levy v Kurpil*, 168 AD2d 881, 883 [3d Dept 1990] ["Where all the elements of adverse possession are established a presumption of hostility arises and the burden shifts to the record owner to produce evidence rebutting the presumption"]). However, hostility is negated by "[s]eeking permission for use from the record owner" (*City of Tonawanda v Ellicott Cr. Homeowners Assn.*, 86 AD2d 118, 124 [4th Dept 1982], *appeal dismissed* 58 NY2d 824 [1983]). Further, where there is a close and cooperative relationship between the record owner and the person claiming title through adverse possession, the presumption of hostility may not apply (*see Hassinger v Kline*, 91 AD2d 988, 989 [2d Dept 1983] ["the neighborly relationship between plaintiffs, their predecessors in title and defendants' predecessors in title, created an implication that the use of the disputed roadway was permissive"]). Thus, in order to establish the hostility element, the party asserting the adverse possession claim must "come forward with affirmative facts to establish that the use [of the property] was under a claim of right and adverse to the interests of [the true owners]" (*Albright v Beesimer*, 288 AD2d 577, 578 [3d Dept 2001] [internal quotation marks omitted]).

Indeed, the Beckers and Gordons were friendly neighbors for many years, and this fact may render the presumption of hostility inapplicable here; however, the evidence submitted by the parties in support of their respective summary judgment motions firmly establishes that Mr. Becker's possession and use of the disputed property was under a claim of right and adverse to Nancie Gordon's interests. It is undisputed that Mr. Becker constructed and maintained, during the applicable statutory period, the boardwalk and dock.[5] He also restricted access to the boardwalk and dock when the general public attempted to use it. There was never any indication that Mr. Becker's possession was with defendants' predecessors' consent or permission. Nor did anyone ever question or object to Mr. Becker's possession and improvement of the property. Mr. Koelsch's deposition testimony implied that he believed that Becker owned the dock. Further, and most significantly, Nancie Gordon averred that (1)

5. Defendants contend there is no admissible evidence in this regard because Robert E. Becker's affidavit is inadmissible—he died before he was deposed (and meaningfully cross-examined). However, evidence in support of this fact also exists in Nancie Gordon's affidavit and deposition testimony, and in the deposition testimony of Mr. Becker's daughter, Lee Ellen Becker.

she believed that the dock and boardwalk were on Mr. Becker's lot, and (2) she did not know until the 1984 survey that the entire dock and part of the boardwalk were actually on lot 30. Finally, Mr. Becker's and Nancie Gordon's mutual mistake does not negate the hostility element (*see Belotti*, 228 NY at 302). Accordingly, plaintiff estate established, by clear and convincing evidence, that Mr. Becker's claim was "hostile" to the rights of defendants' predecessors.

■ To establish the "exclusivity" element, the adverse possessor must alone care for or improve the disputed property as if it were his/her own (*see Beddoe v Avery*, 145 AD2d 818, 819 [3d Dept 1988]). The focus is on whether the party claiming title by adverse possession exercised exclusive possession and control of the property. Thus, allowing others to use the property does not necessarily negate "exclusivity." When the party claiming adverse possession permits others to use the property, exclusivity exists where the claimant's use of the property is "separate and exclusive from the general use" (*Pirman v Confer*, 273 NY 357, 363 [1937]; *see Pro-Fac Coop. v Baltimore & Ohio R. R. Co.*, 36 AD2d 441, 444 [4th Dept 1971]; *see also Levy*, 168 AD2d at 883 [claimant's use is exclusive to the extent that although others use disputed property, claimant's use is not dependent on the right of others to do so]). But note, "exclusivity" is not established "where [a claimant's] use is in connection with the use of the owner and the general public" (*Pirman*, 273 NY at 363).

Here, plaintiff estate established by clear and convincing evidence that Mr. Becker's possession and use of the property was exclusive because although Mr. Becker permitted certain friends and neighbors access to the dock and boardwalk, he did not grant such access to the general public; and the use of the dock and boardwalk by Mr. Becker's friends and neighbors—in the form of a right-of-way—was different in scope than his construction, maintenance and control of the boardwalk and dock. The fact that Mr. Becker's friends and neighbors, including defendants' predecessors, freely used the dock and boardwalk without seeking explicit permission does not negate Mr. Becker's exclusive possession and control of the property. Further, although there is evidence that Nancie Gordon—since the early 1960s—allowed several neighbors, including the plaintiffs' predecessors, to use the beach on lot 30, she, from around 1963 through 1984, was under the impression that the dock and boardwalk, and the land upon which those structures sit, were

entirely on Mr. Becker's lot (lot 29); thus, she could not affect Mr. Becker's exclusive possession of the disputed property.

In conclusion, the evidence that Mr. Becker possessed, used and controlled the disputed land—for the 21 years prior to and including 1984—is sufficient to establish title by adverse possession and grant summary judgment in plaintiff estate's favor.

## III.

Because we hold that plaintiff estate established its adverse possession claim, we need not determine whether it acquired title to the disputed property pursuant to the doctrine of practical location.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the judgment of Supreme Court reinstated to the extent it grants relief to appellant Estate of Robert E. Becker.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order, insofar as appealed from, reversed, etc.