*824 The plaintiff, Air Stream Corp. (hereinafter Air Stream), owns the real property located at 3400 Lawson Boulevard in Oceanside. The defendant, 3300 Lawson Corp. (hereinafter Lawson), owns the real property located at 3300 Lawson Boulevard, which is adjacent to 3400 Lawson Boulevard. Two loading docks are located entirely within Air Stream’s property boundaries, and one loading dock is located entirely within Lawson’s property boundaries. Another loading dock, however, is bisected by the parties’ common property boundary, such that a seven-foot strip of the loading dock (hereinafter the Lawson strip) is located within Lawson’s boundaries, while the remaining seven-foot strip of the loading dock (hereinafter the Air Stream strip) is located within Air Stream’s boundaries.
In 2006 Air Stream commenced this action, alleging that it had acquired the Lawson strip through adverse possession or, in the alternative, had acquired a prescriptive easement. Air Stream further alleged that Lawson never had an easement by grant over the Air Stream strip and, even if such an easement previously existed, Air Stream had extinguished that easement through adverse possession. Additionally, Air Stream sought a permanent injunction enjoining Lawson from fencing in the Lawson strip.
Lawson counterclaimed, inter alia, for an order or judgment directing Air Stream to remove that portion of a cement platform that allegedly encroached on Lawson’s property, as well as a judgment declaring that Lawson enjoys an easement over the Air Stream strip.
Following a nonjury trial, the Supreme Court granted all the relief sought by Air Stream and, in effect, denied Lawson’s counterclaims. Lawson appealed to this Court. By decision and order dated May 17, 2011, this Court reversed the judgment of the Supreme Court insofar as appealed from, and declared that Air Stream did not acquire the Lawson strip by adverse possession, that Lawson has an easement by grant over the Air Stream strip, and that Lawson is not enjoined from interfering with Air Stream’s use of the Lawson strip, and Air Stream was directed to remove that portion of its cement platform that encroaches on Lawson’s property (see Air Stream Corp. v 3300 Lawson Corp., 84 AD3d 987 [2011]). In arriving at this determination, the Court relied in part on Estate of Becker v Murtagh (75 AD3d 575 [2010]).
*825 On April 3, 2012, Estate of Becker v Murtagh (75 AD3d 575 [2010]) was reversed insofar as appealed from (see Estate of Becker v Murtagh, 19 NY3d 75 [2012]). That same day, the Court of Appeals issued a decision in Air Stream Corp. v 3300 Lawson Corp. (18 NY3d 972, 974 [2012], revg 84 AD3d 987 [2011]), in which it reversed this Court’s decision and order and remitted the matter to this Court “for further proceedings in accordance with the principles of law” expressed in Estate of Becker v Murtagh (19 NY3d 75 [2012]).
Upon review of a determination rendered after a nonjury trial, this Court’s authority “is as broad as that of the trial court,” and this Court may “render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses” (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983] [internal quotation marks omitted]; see Walsh v Ellis, 64 AD3d 702, 704 [2009]; Krol v Eckman, 256 AD2d 945, 946-947 [1998]).
“ ‘Where there has been an actual continued occupation of premises under a claim of title, exclusive of any other right, but not founded upon a written instrument or a judgment or decree, the premises so actually occupied, and no others, are deemed to have been held adversely’ (RPAPL former 521). To establish a claim of adverse possession, the occupation of the property must be (1) hostile and under a claim of right (Le., a reasonable basis for the belief that the subject property belongs to a particular party), (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period (at least 10 years). The character of the possession must be such that it would give the owner a cause of action in ejectment against the occupier. In addition, where, as here, the claim of right is not founded upon a written instrument, the party asserting title by adverse possession must establish that the land was ‘usually cultivated or improved’ or ‘protected by a substantial inclosure’ (RPAPL former 522). Because the acquisition of title by adverse possession is not favored under the law, these elements must be proven by clear and convincing evidence” (Estate of Becker v Murtagh, 19 NY3d at 80-81 [some citations and internal quotation marks omitted]).
“To establish the ‘exclusivity’ element, the adverse possessor must alone care for or improve the disputed property as if it were his/her own. The focus is on whether the party claiming title by adverse possession exercised exclusive possession and control of the property. Thus, allowing others to use the property does not necessarily negate ‘exclusivity.’ When the party *826 claiming adverse possession permits others to use the property, exclusivity exists where the claimant’s use of the property is 'separate and exclusive from the general use’ ” (id. at 83, quoting Pirman v Confer, 273 NY 357, 363 [1937] [citation omitted]).
Upon further examination of the trial record, we agree with the Supreme Court that Air Stream met its burden of establishing exclusivity. While the record reflects that Lawson and its tenant used the Lawson strip in connection with various renovations and deliveries, it is apparent that Air Stream nevertheless “exercised exclusive possession and control of the property” (Estate of Becker v Murtagh, 19 NY3d at 83).
We conclude, however, that Air Stream did not satisfy all prerequisites for a finding of adverse possession. “A party claiming title by adverse possession is not required to show enmity or specific acts of hostility in order to establish the element of hostility. This element is satisfied where an individual asserts a right to the property that is adverse to the title owner and also in opposition to the rights of the true owner” (id. at 81 [citations and internal quotation marks omitted]). The Court of Appeals has further stated that “[a] rebuttable presumption of hostility arises from possession accompanied by the usual acts of ownership, and this presumption continues until the possession is shown to be subservient to the title of another. However, hostility is negated by [s]eeking permission for use from the record owner. Further, where there is a close and cooperative relationship between the record owner and the person claiming title through adverse possession, the presumption of hostility may not apply. Thus, in order to establish the hostility element, the party asserting the adverse possession claim must come forward with affirmative facts to establish that the use [of the property] was under a claim of right and adverse to the interests of [the true owners]” (id. at 81-82 [citations and internal quotation marks omitted]).
In Estate of Becker v Murtagh, the Court of Appeals observed that the “friendly” relationship between certain neighbors in that case “may render the presumption of hostility inapplicable” (id. at 82). It found, however, that the plaintiff estate had satisfied the hostility requirement because, inter alia, “[t]here was never any indication” that the decedent’s possession of the disputed property was with consent or permission, and no one “ever questioned] or object[ed] to” the decedent’s possession of the property (id.).
We find that in the instant case, a friendly relationship between neighbors existed, and that once Lawson acquired the *827 Lawson strip, Air Stream’s use of that strip was with Lawson’s permission. This conclusion is supported by letters from Lawson to Air Stream during the prescriptive period, as well as the parties’ testimony. We further find that once Air Stream began to use the Lawson strip in a manner that Lawson found objectionable, Lawson complained to Air Stream within the prescriptive period.
To the extent that the parties dispute the nature of their relationship or the meaning of various letters, we disagree with the Supreme Court’s determination that “[n]either side has the edge when it comes to credibility in this case” (Air Stream Corp. v 3300 Lawson Corp., 24 Misc 3d 1208[A], 2009 NY Slip Op 51317[U], 10 [2009]). In light of the highly questionable testimony of an Air Stream principal with respect to receipt of letters from a Lawson principal and the shredding of various documents, we find that Air Stream’s version of events is more difficult to credit. Moreover, although Air Stream insists that letters from Lawson dated September 19, 2000, and May 14, 2002, respectively, do not pertain to the loading dock at issue in this case, we note that in its brief to this Court, Air Stream cited both letters in support of its claim that it cultivated and improved the relevant dock.
Accordingly, Air Stream failed to establish that it acquired the Lawson strip by adverse possession. Because the proponent of a prescriptive easement claim must also establish hostility, Air Stream similarly did not acquire a prescriptive easement with respect to that property (see Almeida v Wells, 74 AD3d 1256, 1259 [2010]; Sadowski v Taylor, 56 AD3d 991, 994 [2008]).
Air Stream’s contention that Lawson never obtained an easement by grant over the Air Stream strip is belied by the record. “ ‘[A] grantor cannot create an easement benefitting land not owned by the grantor’ at the time of the grant” (Sachar v East 53 Realty, LLC, 63 AD3d 715, 715 [2009], quoting Beachside Bungalow Preserv. Assn. of Far Rockaway v Oceanview Assoc., 301 AD2d 488, 489 [2003]). Here, Air Stream and Lawson acquired the properties relevant to this appeal from a common grantor. That grantor created an easement by reservation over the area now known as the Air Stream strip at a time when it still owned the property currently known as 3300 Lawson Boulevard. Accordingly, that easement is valid (see Laera v Molina, 100 AD2d 615, 616 [1984]; cf. Matter of Estate of Thomson v Wade, 69 NY2d 570, 573-574 [1987]; Sachar v East 53 Realty, LLC, 63 AD3d at 715).
Under the circumstances, the fact that not all deeds in Lawson’s chain of title contain appurtenance clauses is *828 inconsequential. As we explained in Strnad v Brudnicki (200 AD2d 735, 737 [1994]), “[e]ven if we assume that [an] easement is not appurtenant and did not pass automatically to the subsequent owners, a person who purchases the servient estate with actual or constructive notice of the easement is estopped from denying the existence of the easement.” Here, Air Stream, the purchaser of the servient estate, was on notice of the easement. Not only is the easement reflected in Air Stream’s own chain of title but, prior to purchase, the previous owner of 3400 Lawson Boulevard informed an Air Stream principal of the easement (see Russell v Perrone, 301 AD2d 835, 836 [2003]; Zunno v Kiernan, 170 AD2d 795, 796 [1991]). Air Stream’s remaining contentions regarding the purported invalidity or extinguishment of Lawson’s easement over the Air Stream strip are similarly without merit.
Lastly, the record reflects that Air Stream built a cement platform in 2004 or 2005 that encroaches on Lawson’s property. The Supreme Court should have ruled in Lawson’s favor on its third counterclaim, and directed Air Stream to remove the encroaching portion of the platform (see Skyview Motel, LLC v Wald, 82 AD3d 1081, 1081-1082 [2011]). Mastro, J.P., Balkin, Leventhal and Belen, JJ., concur.