Correra v 60 Millwood Partners, LLC (2025 NY Slip Op 50138(U))

[*1]

Correra v 60 Millwood Partners, LLC

2025 NY Slip Op 50138(U)

Decided on February 7, 2025

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 7, 2025
Supreme Court, Westchester County

Robert Correra and Regina Santospirito-Correra, Plaintiffs,

against
60 Millwood Partners, LLC, Defendant.

Index No. 67812/2019

Attorney for plaintiffs: Cuddy & Feder LLP
Attorney for defendant: Dorf Nelson & Zauderer LLP

Robert S. Ondrovic, J.

On November 12 and 13, 2024, a nonjury trial was held regarding the causes of action in the complaint seeking, inter alia, a judgment declaring that the plaintiffs have a prescriptive easement over certain real property owned by the defendant and to enjoin the defendant from interfering with their use of the easement. After considering the sworn testimony of the parties, the credibility of the witnesses, the documents admitted into evidence, and the parties' closing statements, the Court makes the following findings of fact and conclusions of law:
Factual and Procedural History
The plaintiffs are the owners of certain real property located at 302 Saw Mill River Rd., Millwood, NY, which they purchased in August 1988 (hereinafter the plaintiffs' property). The plaintiffs' property is improved with, among other things, a single-family residence. The driveway to the plaintiffs' property leads to Route 100.
In 2015, the defendant purchased certain real property located at 60 Millwood Rd., Millwood, NY (hereinafter the defendant's property). When the plaintiffs purchased their property in 1988, the defendant's property was owned by Millwood Fire Company No. 1, Inc. (hereinafter the Fire Company). In 1999, the defendant's property was deeded by the Fire Company to the Millwood Fire District (the Fire District).
In October 2019, the plaintiffs commenced an action pursuant to RPAPL article 15 for a judgment declaring that they have a prescriptive easement over certain real property owned by the defendant and to enjoin the defendant from interfering with their alleged right of ingress and [*2]egress over the easement. In an amended complaint, the plaintiffs alleged that since 1988, they have used a 15-foot wide, 160-foot long path that runs south across several parcels to access Millwood Road (hereinafter the path). The path traverses a parking lot on the defendant's property (hereinafter the alleged easement). The plaintiffs claimed that their use of the alleged easement was hostile, open and notorious, and continuous and uninterrupted until some point after 2015, when the defendant purchased its property from the Fire District and began blocking the plaintiffs' access.
In February 2020, the Supreme Court (Hon. Linda S. Jamieson), denied the defendant's motion pursuant to CPLR 3211(a) to dismiss the amended complaint for failure to join a necessary party. The court rejected the defendant's contention that the landowners of the parcels that lie between the plaintiffs' property and the defendant's property are necessary parties to this action since "there is no dispute between plaintiffs and the non-party landowners."[FN1]

Thereafter, in August 2021, the Supreme Court (Hon. Linda S. Jamieson), granted the defendant's motion, inter alia, pursuant to CPLR 3212 for summary judgment dismissing the amended complaint (hereinafter the August 2021 D&O). The court held that the plaintiffs "cannot establish, by clear and convincing evidence that their use of the area was continuous and uninterrupted" based on evidence that "the Fire Company at all relevant times controlled the area, blocking it at will when it suited its purposes."[FN2]
The court also held that the defendant demonstrated that the plaintiffs' use of the alleged easement was not hostile and the plaintiffs' relationship with the defendant's predecessors in interest was one of neighborly cooperation or accommodation.
In a decision and order entered February 14, 2024, the Appellate Division, Second Department (hereinafter the Appellate Division) reversed the August 2021 D&O insofar as appealed from. The Appellate Division determined, inter alia, that "the defendant failed to establish, prima facie, that the plaintiffs' use of the path was not adverse and continuous for the prescriptive period," emphasizing that the defendant cannot meet its burden by "merely pointing to gaps in the plaintiff's case."[FN3]
The Appellate Division also held that the defendant's evidence was insufficient to establish, prima facie, "that any prior owner gave express or implied permission to the plaintiffs to use the path."[FN4]

By decision and order dated September 6, 2024, the Supreme Court (Hon. Lewis J. Lubell), denied the defendant's motion to amend its answer to add an affirmative defense of governmental immunity. The court noted that the defendant never filed a copy of its original answer and, in any event, no extenuating circumstances existed to warrant the amendment at that late juncture.
The Trial
A nonjury trial was held on November 12 and 13, 2024. The plaintiffs Robert Correra (hereinafter Robert), and Regina Santospirito-Correra (hereinafter Regina, together with Robert, the plaintiffs), testified as follows:
The plaintiffs have resided at their property for the last 36 years. Between 1988 and [*3]1999, Robert used the path between the plaintiffs' property and Millwood Road daily for ingress and egress. The plaintiffs' property does not abut the defendant's property. The property directly to the north of the defendant's property is owned by Con Edison. According to Robert, he used the path daily until 2017, when the defendant blocked the plaintiffs' access to the alleged easement, which is a paved parking lot. The plaintiffs' former neighbors to the south of their property also used the path in the same manner as the plaintiffs. Although Route 100 is located closer to the plaintiffs' property than Millwood Road, Robert used the path as a matter of convenience.
Robert could not recall any instance between 1988 and 1998 when his access to the alleged easement was blocked. On occasion, he was unable to access the alleged easement for a period of a few hours when the Fire Company was conducting an inspection or when there was "an open house."[FN5]
The Fire Company usually used a "sawhorse" to "limit [the plaintiffs'] usage."[FN6]
Between 1988 and 1998, Robert never had any communications with anyone from the Fire Company about the plaintiffs' use of the alleged easement.
On cross examination, Robert confirmed that no one from the Fire Company ever objected to his use of the alleged easement. He stated that when the Fire Company blocked his access to the alleged easement, he used an alternate route via Route 100. Robert never contacted anyone at the Fire Company to complain when his access was blocked. He testified that after the defendant purchased the property, the defendant blocked vehicular access to the alleged easement. Robert confirmed that he has to pass through five properties on the path to reach Millwood Road from the plaintiffs' property. He acknowledged that he was discharged from the fire department when, after a disciplinary hearing, he was found guilty of making false statements on his 2020 annual medical questionnaire.
On redirect examination, Robert testified that no one every gave him permission to use the alleged easement. He stated that when the Fire Company blocked access to the alleged easement during an open house, he was still able to access it on foot and bicycle. 
Regina used the alleged easement "every other day" between 1988 and 1998, and accessed it by vehicle, bicycle, in-line skates, and foot.[FN7]
The last time she used the alleged easement was in 2017. Regina preferred to use the path to access Millwood Road because its "flatter" and "Route 100 is very dangerous."[FN8]
According to Regina, she has a legal right to use the path because "[i]t's in the deed."[FN9]
She could not recall any instance between 1988 and 1998, when her access to the path was blocked. Regina never had any communication with anyone from the fire department about the alleged easement and never received permission from anyone to use it.
After the plaintiffs rested, the defendant's attorney moved for a directed verdict, which was denied. Gregory Santone, Richard Scanlan, Mitchell Usavich, and Adam Garber were called to the stand to testify on behalf of the defendant.
Santone has been an active member of the fire department since 1976, and is familiar [*4]with the property located at 60 Millwood Road. Santone stated that between 1988 and 1998, the plaintiffs, as well as other neighbors, were permitted to use the alleged easement for ingress and egress. He testified that the use was permitted because the Fire Company is "a community organization" and it "was neighborly" and "an accommodation."[FN10]
Santone stated that the Fire Company allowed the neighbors to use the alleged easement unless there was a "special training or event or annual inspection or open house."[FN11]
He testified that annual inspections were held once a year in the spring, from approximately 8:00 a.m. to 8:00 p.m. Santone stated that the open house was held annually, usually on a Sunday, during fire prevention week. He also noted that training occurred every Tuesday evening for approximately two hours and a vehicle or "traffic control device" was used to block the alleged easement.[FN12]
Santone stated that between 1988 and 1998, training was also held at a second fire station located at 100 Millwood Rd., but claimed that both stations were used simultaneously. Santone testified that the alleged easement was occasionally blocked during "cleanup periods," which occurred three to four evenings per week between 7:30 p.m. and 9:30 p.m. for a period of approximately three to four weeks leading up to the annual inspection.[FN13]
Santone acknowledged that there were no records documenting when these "events" took place between 1988 and 1998.[FN14]

According to Santone, the topic of allowing the neighbors to use the alleged easement was discussed at Fire Company meetings. He was not aware if anyone had ever communicated to the plaintiffs that they had permission to "[p]ass through."[FN15]
Santone stated that he observed the plaintiffs use the alleged easement by vehicle, but also saw them on foot. He acknowledged that there were no records demonstrating that the Fire Company had a policy that the plaintiffs were permitted to use the alleged easement.[FN16]
Santone stated that when the alleged easement was blocked with a temporary barricade during cleanup periods or training, it was still accessible by foot, however, it was the intention of the Fire Company to block pedestrian traffic. Santone testified that the Fire Company never sought permission from the plaintiffs or other neighbors before blocking their access to the alleged easement.
Scanlan testified that he was a member of the fire department between 1974 and 2020. He stated that between 1988 and 1998, the Fire Company permitted the plaintiffs and other neighbors to traverse the alleged easement area. Scanlan described that it was a "friendlier atmosphere" and "it was just like a neighborhood."[FN17]
He asserted that the Fire Company "didn't stop anybody from using it unless [there] was an occasion" because "it just wasn't a neighborly thing."[FN18]
Scanlan stated that the plaintiffs had "tacit permission to use it whenever [they] wanted unless [the Fire Company was] blocking it off."[FN19]
He confirmed that "there was nothing in [*5]writing."[FN20]

Scanlan testified that the alleged easement was blocked off to vehicular and pedestrian traffic during annual inspections, and was blocked off to vehicular traffic during cleanups and drills. He acknowledged that the barricades were temporary. Scanlan estimated that approximately 50 of these "events" occurred between 1988 and 1998.[FN21]
He stated that the Fire Company did not ask the neighbors for permission before blocking their access and did not provide advance notice. According to Scanlan, the plaintiffs never complained or interfered when the Fire Company or the Fire District blocked their access. He testified that training was held every Tuesday night. Scanlan confirmed that other neighbors used the alleged easement and that he also used the path as a nearby homeowner and never sought permission to do so.
Usavich, an employee at a title agency known as Statewide Abstract, testified that no recorded easement existed that allowed the plaintiffs to traverse "the Con Edison property to even reach [the defendant's property]."[FN22]

Garber is a member of the defendant and acquired his interest in 2015. He testified that the defendant's property is rented by a construction company and the tenant's use of the property would be adversely affected by the plaintiffs' claim that they have a prescriptive easement. Garber testified that when the defendant purchased the property, he was told by the Fire District that "any access that was given [to the neighbors] was neighborly" and "[t]hey had no easement."[FN23]
He acknowledged that the defendant's property was vacant between 2015 and 2019, and that a chain was installed "where the Con Ed property meets the edge of the 60 Millwood back parking lot" after the defendant purchased the property.[FN24]

At the close of testimony, the Court directed counsel to submit closing statements to chambers within 30 days after receipt of the transcript.
Closing Statement
In a closing statement, the plaintiffs' attorney argued that the evidence adduced at trial established that the plaintiffs used the alleged easement adversely, openly, notoriously, and continuously for decades since 1988, for ingress and egress between their property and Millwood Road. He asserted, among other things, that the defendant failed to demonstrate that the plaintiffs' use of the alleged easement was permissive. The plaintiffs' attorney argued that no express permission was given to the plaintiffs and there was no evidence to support a finding of neighborly accommodation. He contended that the defendant failed to establish that periodic use of a temporary barricade to block the plaintiffs' access actually interfered with the plaintiffs' continuous use of the alleged easement. The plaintiffs' attorney highlighted that none of the witnesses at trial were able to specify any exact dates when the plaintiffs were prevented from using the alleged easement.
The defendant's attorney argued, inter alia, that the plaintiffs failed to demonstrate that their use of the alleged easement was hostile, exclusive, under claim of right, and continuous. He emphasized that the defendant demonstrated, through the testimony of Santone and Scanlan, that [*6]use of the alleged easement by the plaintiffs and other neighbors who lived north of the defendant's property was permitted as a matter neighborly accommodation. The defendant's attorney asserted that it is undisputed that the alleged easement was blocked multiple times throughout the year, for several hours at a time, the plaintiffs never prevented the Fire Company or the Fire District from blocking their access, pedestrian traffic was not allowed when an apparatus was blocking the alleged easement, and Robert acknowledged that he was then required to use an alternate route to access the plaintiffs' property. He also contended that the plaintiffs failed to sufficiently describe the portion of the defendant's property that they claim to have a prescriptive easement over.
Analysis
"To acquire an easement by prescription, it must be shown that the use was hostile, open and notorious, and continuous and uninterrupted for the prescriptive period of 10 years" (Aboulissan v Kingsland 79, LLC, 179 AD3d 878, 879 [2d Dept 2019] [internal quotation marks omitted]; see Morales v Riley, 28 AD3d 623 [2d Dept 2006]). "In general, where an easement has been shown by clear and convincing evidence to be open, notorious, continuous, and undisputed, it is presumed that the use was hostile, and the burden shifts to the opponent of the allegedly prescriptive easement to show that the use was permissive" (Aboulissan v Kingsland 79, LLC, 179 AD3d at 879 [internal quotation marks omitted]; see Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012]). "Such permission can be express or implied and 'if the first possession is by permission it is presumed to so continue until the contrary'" (Baritone v Conforti-Brown, 150 AD3d 1068, 1071 [2d Dept 2017] [internal citations omitted], quoting Hinkley v State of New York, 234 NY 309, 317 [1922]).
"[H]ostility does not require a showing of enmity or specific acts of hostility," but only "that the [use] constitutes an actual invasion of or infringement upon the owner's rights" (Aboulissan v Kingsland 79, LLC, 179 AD3d at 879 [internal quotation marks omitted]; see Estate of Becker v Murtagh, 19 NY3d at 81). This presumption of hostility, however, does not arise "'when the parties' relationship was one of neighborly cooperation or accommodation'" (Colin Realty Co., LLC v Manhasset Pizza, LLC, 137 AD3d 838, 840 [2d Dept 2016], quoting Ward v Murariu Bros., Inc., 100 AD3d 1084, 1085 [3d Dept 2012]; see Hassinger v Kline, 91 AD2d 988, 989 [2d Dept 1983]).
Here, the plaintiffs established by clear and convincing evidence that their use of the alleged easement was open and notorious, and continuous. Between 1988 and 1998, the Fire Company operated a fire station on the defendant's property. During that time, the plaintiffs routinely used a path that traversed a parking lot on the defendant's property, to wit, the alleged easement, to access Millwood Road. Robert testified that he used the path daily and Regina testified that she used it every other day. The evidence adduced at trial established that access to the alleged easement was blocked by the Fire Company periodically, for several hours at a time, during annual inspections, training, open house, and cleanup periods. Contrary to the defendant's contention, evidence that the plaintiffs' use of the alleged easement was restricted intermittently on an unspecified number of days during the year for short durations at a time is insufficient to show that the use was not continuous.
Nevertheless, the Court credits the testimony of Santone and Scanlan that use of the alleged easement by the plaintiffs and other neighbors was permitted by the Fire Company "as a matter of willing accord and neighborly accommodation" (Colin Realty Co., LLC v Manhasset Pizza, LLC, 137 AD3d 838, 840 [2d Dept 2016]; Duckworth v Ning Fun Chiu, 33 AD3d 583, [*7]584 [2d Dept 2006] see Bolognese v Bantis, 215 AD3d 616, 620 [2d Dept 2023]; Isnady v Walden Preservation, L.P., 208 AD3d 568, 570 [2d Dept 2022]; 315 Main Street Poughkeepsie, LLC v WA 319 Main, LLC, 62 AD3d 690, 691 [2d Dept 2009]).
Santone, an active member of the fire department since 1976, and Scanlan, a member of the fire department between 1974 and 2020, credibly testified that the Fire Company had permitted the plaintiffs and other neighbors to use the alleged easement since the inception because the Fire Company was a volunteer, community organization, and it was neighborly. Robert acknowledged that other neighbors also used the alleged easement, and Santone also testified that he used the alleged easement himself as a nearby resident on rare occasions. It is undisputed that the Fire Company was aware of the plaintiffs' use, the plaintiffs did not seek permission to use the alleged easement, and no express permission was provided. It is also undisputed that the Fire Company never sought permission from the plaintiffs or other neighbors before blocking their access to the alleged easement and, importantly, the plaintiffs never complained when their use was restricted. There is no evidence whatsoever that any disputes arose between the plaintiffs and the Fire Company between 1988 and 1998 when the plaintiffs were prevented from accessing the alleged easement. Although the plaintiffs testified that it was possible to go around a barrier or apparatus and access the alleged easement by foot, there is no evidence or testimony that they actually did so. Rather, the credible evidence at trial demonstrated that when access to the alleged easement was restricted, the plaintiffs complied, reflecting an understanding that they were only permitted to use the alleged easement when it was not barricaded. At trial, Robert, who was a member of the fire department between 2003 and 2020, acknowledged that when access to the alleged easement was blocked to vehicular traffic, he used his own driveway which leads to Route 100. There is an utter lack of evidence that the plaintiffs ever asserted a right which was hostile to the rights of the Fire Company, and their use of the alleged easement "connoted not a hostile user, but, rather, a permissive one" (Hassinger v Kline, 91 AD2d 988, 989 [2d Dept 1983]).
Under these circumstances, the Court finds that the trial evidence established that the plaintiffs' use of the alleged easement resulted from a long history of neighborly cooperation and accommodation from which permissive use may be inferred.
Accordingly, it is hereby
ORDERED, ADJUDGED, and DECLARED that the plaintiffs do not have a prescriptive easement over the defendant's property; and it is further,
ORDERED that the defendant is directed to submit to the Court a proposed judgment on seven (7) days' notice, within thirty (30) days following entry of the instant decision and order.
Dated: February 7, 2025
White Plains, NY
HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc No 38 at p 3

Footnote 2:NYSCEF Doc No 93 at pp 5-6

Footnote 3:NYSCEF Doc No 121 at p 2

Footnote 4:NYSCEF Doc No 121 at p 2

Footnote 5:NYSCEF Doc No 192 at 27

Footnote 6:id.

Footnote 7:id. at 78

Footnote 8:id. at 80 

Footnote 9:id. at 81

Footnote 10:id. at 104

Footnote 11:NYSCEF Doc No 193 at 103

Footnote 12:id. at 135-136

Footnote 13:id. at 113-114, 138-139

Footnote 14:id. at 130-131 

Footnote 15:id. at 118

Footnote 16:id. at 122

Footnote 17:id. at 161-162

Footnote 18:id. at 157 

Footnote 19:id. at 158

Footnote 20:id. at 186-187

Footnote 21:id. at 181

Footnote 22:id. at 196

Footnote 23:id. at 211-212

Footnote 24:id. at 216