Hamil v Casadei (2023 NY Slip Op 01338)

Hamil v Casadei

2023 NY Slip Op 01338

Decided on March 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 16, 2023

534858 
[*1]Lynn M. Hamil et al., Respondents,
v
Michael Casadei et al., Appellants, et al., Defendants.

Calendar Date:January 13, 2023

Before:Egan Jr., J.P., Lynch, Clark, Ceresia and Fisher, JJ.

John W. Sutton, Galway, for appellants.
Gilchrist Tingley, PC, Troy (Jonathon B. Tingley of counsel), for respondents.

Lynch, J.
Appeal from an order of the Supreme Court (Thomas D. Buchanan, J.), entered January 14, 2022 in Schenectady County, which granted plaintiffs' motion for, among other things, partial summary judgment.
This property dispute concerns a tract of land located in Schenectady County (hereinafter the disputed area), which sits between two parcels owned by plaintiffs and runs perpendicular to property owned by defendants Michael Casadei and Annamarie Neri (hereinafter defendants). Plaintiffs commenced this action seeking, among other things, to quiet title to the disputed area, claiming that they were the fee owners through adverse possession. Defendants joined issue and interposed a counterclaim contending that they were the rightful owners of the disputed area, relying on a tax map purporting to support that assertion. Plaintiffs thereafter moved for partial summary judgment on their cause of action to quiet title and sought dismissal of defendants' counterclaim. Over defendants' opposition, Supreme Court granted plaintiffs' motion and dismissed defendants' counterclaim, declaring that plaintiffs had acquired ownership of the disputed area through adverse possession.[FN1] Defendants appeal.
We affirm. "To demonstrate [ownership of the disputed area by] adverse possession . . . , plaintiff[s] bore the burden of showing by clear and convincing evidence that the character of the possession was hostile and under a claim of right, actual, open and notorious, exclusive and continuous for the statutory period of 10 years" (Church of St. Francis De Sales v McGrath, 200 AD3d 1267, 1267-1268 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). "A use of land is generally presumed to be hostile when the other elements of adverse possession are shown" (Church of St. Francis De Sales v McGrath, 200 AD3d at 1268 [internal quotation marks and citations omitted]; see CJA Realty Holdings, LP v 14 Phila St. LLC, 206 AD3d 1520, 1521-1522 [3d Dept 2022]). Prior to 2008, where title was "not founded upon a written instrument, the person claiming title by adverse possession [could] establish title 'only to that portion of the disputed premises that was cultivated, improved or protected by a substantial enclosure' " (Church of St. Francis De Sales v McGrath, 200 AD3d at 1268, quoting Silipigno v F.R. Smith & Sons, Inc., 71 AD3d 1255, 1257 [3d Dept 2010]; see RPAPL former 522 [1], [2]; Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012]).[FN2]
In support of their motion for summary judgment, plaintiffs submitted photographs of the disputed area, an affidavit from Robert T. Simmons, the deeds in their chain of title, and their own affidavits. These submissions demonstrate that the disputed area was the former bed of a trolley line that was abandoned in the 1940s. In the 1990s, Simmons acquired the two parcels that now make up plaintiffs' property, with the disputed area located between the two. Simmons built a house on the first parcel, which required removing [*2]a large amount of fill to prepare the area for construction. In his affidavit, Simmons explained that he relocated the fill to the disputed area to level it and incorporate it into his lawn, which he cultivated, possessed and maintained for over 10 years. He also constructed a driveway that ran through a portion of the disputed area up to his residence, which he plowed, repaired and improved for more than a decade. Simmons averred that he performed these tasks in an open and obvious manner to the exclusion of others and that, when he conveyed his parcels to Christina Francis in January 2006, it was his "intent to convey, and [his] understanding that [he] was conveying, to . . . Francis . . . any and all rights [he] had in and to the entire [l]awn [a]rea and [d]riveway [a]rea, including the [d]isputed [a]rea." Indeed, the deed from Simmons to Francis contains a clause expressly conveying the property "[t]ogether with the appurtenances and all the estate and rights of [Simmons] in and to said premises." Francis, in turn, conveyed the parcels to plaintiffs on January 18, 2008 by warranty deed containing the same clause.
In plaintiffs' affidavits, they explained that, when they purchased their property from Francis, they understood the conveyance to include the disputed area. Most of plaintiffs' front lawn — including a portion of the disputed area — is located within a fence, which was erected prior to their acquisition of the property. Plaintiffs averred they have mowed the front lawn, including the disputed area "both within and without the fence," for more than 12 years "without any interruption or any claim by any party that any portion of [the disputed area] was allegedly owned by someone else." Plaintiffs also maintained the fence as needed, permitted their dog to use the area within the fence and continuously used the driveway that runs through the disputed area. The photographs submitted by plaintiffs in support of their motion corroborate the existence of such a driveway and fence. In March 2020, plaintiffs received a letter from Casadei claiming that they did not own the disputed area. Casadei thereafter "destroyed and removed sections of [the] fencing and began cutting and felling trees on the edge of [plaintiffs'] property such that they fell into [their] front lawn within the fenced in area." This conduct resulted in the commencement of the underlying action.
On this record, plaintiffs satisfied their prima facie burden on their cause of action to quiet title. Simmons' affidavit makes clear that he continually possessed, cultivated, maintained and used the disputed area, under a claim of right and to the exclusion of others, from 1991 to 2006. The manner in which he conveyed his claim of ownership — by mowing the lawn and constructing and plowing a driveway — would have been open and notorious to nearby property owners (see Gorman v Hess, 301 AD2d 683, 684 [3d Dept 2003]). In light of the foregoing, a presumption of hostility arose and [*3]plaintiffs established, on a prima facie basis, that title to the disputed area vested in Simmons by adverse possession in 2001 (see Church of St. Francis De Sales v McGrath, 200 AD3d at 1268; 2 N. St. Corp. v Getty Saugerties Corp., 68 AD3d 1392, 1394 [3d Dept 2009], lv denied 14 NY3d 706 [2010]), and then transferred to plaintiffs when they purchased their properties (see generally Brand v Prince, 35 NY2d 634, 636-640 [1974]; Connell v Ellison, 86 AD2d 943, 944 [3d Dept 1982], affd 58 NY2d 869 [1983]).
Defendants' submissions in opposition were insufficient to raise a triable issue of fact. Although the affirmation from defendants' attorney posed various questions that the attorney opined remained outstanding — such as whether Simmons took possession of the disputed area under a claim of right and whether he reviewed a survey that was done on the property to determined who owned it — these questions are conjectural and devoid of evidentiary support (see Zuckerman v City of New York, 49 NY2d 557, 563 [1980]; Desola v Mads, Inc., 213 AD2d 445, 446 [2d Dept 1995]). Defendants' contention that Simmons did not have a claim of right to the disputed area because he knew, or reasonably should have known, of other claims to title insofar as he acknowledged that it was previously the site of a trolley bed fails to account for Simmons' statement that the trolley bed had been abandoned by its previous owner. In any event, it is well settled that "an adverse possessor's actual knowledge of the true owner" of the disputed property "is not fatal to an adverse possession claim," with the adverse possessor's conduct being the more important factor (Walling v Przybylo, 7 NY3d 228, 233 [2006]). Simmons' acts of ownership were more than sufficient to establish that he acted under a claim of right.
Nor is the documentary evidence submitted with defendants' motion sufficient to defeat plaintiffs' prima facie showing. The deeds in defendants' chain of title describe their property using metes and bounds measurements and there is no affidavit or report from a surveyor demonstrating that these conveyances included the disputed area. Moreover, the screen shot of a tax map submitted by defendants has limited probative value in answering the question at hand, for the map does not have any labels identifying what land it depicts and, in any event, a tax map does not establish title to property (see Matter of Carpentier v County of Sullivan, 123 AD3d 1412, 1413 [3d Dept 2014]). Finally, the excerpts from a survey performed in 2020, after title to the disputed area had already vested in plaintiffs, do not reveal any outstanding issues that are germane to the underlying dispute. On this record, Supreme Court properly granted plaintiffs' motion and dismissed defendants' counterclaim (see generally Connell v Ellison, 86 AD2d at 944).[FN3]
Egan Jr., J.P., Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The complaint also listed the Town of Glenville and the Superintendent of Highways of the Town of Glenville (hereinafter collectively referred to as the Town) as defendants. The Town answered and interposed two counterclaims seeking a declaration that the disputed area was a Town highway. The Town thereafter moved to dismiss the complaint as asserted against it pursuant to CPLR 3211 (a) (1), but said motion was denied. The record does not contain any subsequent motion practice or filings by the Town, nor has the Town appealed from the order granting plaintiffs summary judgment.

Footnote 2: Plaintiffs claim that they are the fee owners of the disputed area under two theories: (1) that title vested by adverse possession in their predecessor in interest and then transferred to plaintiffs through the deeds in their chain of title; or (2) that plaintiffs acquired title to a portion of the disputed area by adverse possession through their own actions over the course of a 10-year period beginning in 2008. Although plaintiffs commenced this action after the effective date of the 2008 amendments to the RPAPL (see L 2008, ch 269), the first theory is governed by the version of the RPAPL in effect prior to those amendments insofar as plaintiffs assert that title vested in their predecessor in 2001 and was passed to them upon the purchase of their property prior to the effective date of the amendments (see LS Mar., LLC v Acme of Saranac, LLC, 174 AD3d 1104, 1106 n 6 [3d Dept 2019]).

Footnote 3: Insofar as Supreme Court concluded that plaintiffs were the owners of the entirety of the disputed area by virtue of Simmons' conduct for the statutory period, which subsequently transferred to plaintiffs when they acquired their parcels, Supreme Court did not consider plaintiffs' alternative theory that their own conduct following the acquisition of their parcels was sufficient in itself to acquire title to the portion of the disputed area enclosed by the fence. Since we agree with Supreme Court's determination, we need not consider this alternate theory.