Gordon v Rich (2025 NY Slip Op 02976)

Gordon v Rich

2025 NY Slip Op 02976

Decided on May 15, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 15, 2025

CV-23-1803
[*1]Joy A. Gordon, Appellant,
v
William Keith Rich et al., Respondents.

Calendar Date:January 8, 2025

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

King, Adang & Arpey, Saratoga Springs (Anthony P. Adang of counsel), for appellant.
Anderson Firm PLLC, Saratoga Springs (Michele L. Anderson of counsel), for respondents.

Aarons, J.
Appeal from an order of the Supreme Court (Kathleen Hogan, J.), entered August 14, 2023 in Washington County, which, among other things, granted defendants' motion for summary judgment dismissing the complaint.
Plaintiff and defendants are members of the same extended family [FN1] and own adjoining parcels of land in the Town of Jackson, Washington County. Between these two parcels runs Shunpike Road; plaintiff owns land on the western side of Shunpike Road (hereinafter the western parcel) while defendants own land on the road's eastern side (hereinafter the eastern parcel). Also sitting on the eastern side of Shunpike Road is a warehouse built in 1953 by William Kenneth Rich (hereinafter the grandfather) — the grandfather of plaintiff and defendant William Keith Rich (hereinafter defendant) — with the help of his two sons: John R. Rich (hereinafter plaintiff's father) and William K. "Bill" Rich (hereinafter defendant's father). In 1963, plaintiff's father and defendant's father (hereinafter collectively referred to as the brothers) formed a business and used the warehouse as storage for the business.
The grandfather subdivided his land in 1973 to form the parties' respective parcels. As relevant here, the grandfather conveyed a life estate in the western parcel to plaintiff's parents, with the remainder interest to their children — including plaintiff. By separate deed, the grandfather conveyed a life estate in the eastern parcel to defendant's parents, with the remainder interest to their children — including defendant. Those future estates were all subject to the life estates in both parcels that the grandfather reserved to himself and his spouse for the "possession and enjoyment" of the "premises" for the rest of their natural lives.
The grandfather died in 1984, and the brothers continued to use the warehouse as storage until they ceased operating their business in 1993. In 1998, plaintiffs' parents and siblings conveyed their respective interests in the western parcel to plaintiff. Then, after the grandfather's spouse died in 2000, defendant's parents and siblings conveyed their respective interests in the eastern parcel to defendants in 2005. That 2005 deed of conveyance reserved to defendant's father "the exclusive right and privilege to use the warehouse and surrounding clear grounds" during his natural lifetime. Defendant's father died in 2011.
A land survey commissioned in 2019 revealed that, according to the calls in the parties' respective deeds, the boundary line between plaintiff's and defendants' parcels runs east of the warehouse, and thus the warehouse and surrounding land (hereinafter the disputed area) are part of the western parcel owned by plaintiff. Plaintiff commenced this action in 2022 pursuant to RPAPL article 15 seeking to, among other things, quiet title to the disputed area. Defendants joined issue and interposed counterclaims asserting, among other things, that they acquired title to the disputed area by adverse possession[*2](see generally RPAPL art 5). Cross-motions for summary judgment ensued, and Supreme Court granted defendants' motion, denied plaintiff's cross-motion and dismissed the complaint. Plaintiff appeals.
"As always, the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law[,] and our function on a summary judgment motion is to view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference, and determine whether there is any triable issue of fact outstanding" (Barra v Norfolk S. Ry. Co., 75 AD3d 821, 822-823 [3d Dept 2010] [internal quotation marks, brackets and citations omitted]). "To demonstrate ownership of the disputed area by adverse possession, [defendants] bore the burden of showing by clear and convincing evidence that the character of the possession was hostile and under a claim of right, actual, open and notorious, exclusive and continuous for the statutory period of 10 years" (Hamil v Casadei, 214 AD3d 1177, 1177 [3d Dept 2023] [internal quotation marks, brackets, ellipsis and citations omitted]; see EPG Assoc., LP v Cascadilla Sch., 194 AD3d 1158, 1163 [3d Dept 2021], lv dismissed 37 NY3d 1103 [2021], lv denied 30 NY3d 910 [2024]). "Although in certain instances hostility is presumed upon proof of other elements, that is not the case, where, as here, the user and the landowner are related by blood" (Rundberg v Rundberg, 140 AD3d 1461, 1462 [3d Dept 2016] [citations omitted], lv denied 29 NY3d 902 [2017]; see Turner v Baisley, 197 AD2d 681, 682 [2d Dept 1993]).
"Initially, the 2008 amendments [to RPAPL article 5] apply in this matter because the record fails to demonstrate any 10-year period before their enactment that could have allowed [defendants'] title to vest" (Hongwei Guan v EZC Carolinas, LLC, 222 AD3d 1086, 1087 [3d Dept 2023] [citations omitted]).[FN2] "Viewing the evidence in the light most favorable to plaintiff, as we must" (Longshore v Hoel Pond Landing, 284 AD2d 815, 815 [3d Dept 2001], lv denied 97 NY2d 603 [2001]), defendant's father's possession of the disputed area began when the brothers' business began using it in 1963, presumably with the grandfather's permission. Where possession of real property begins as permissive, that permission is presumed to continue until the contrary appears (see Hinkley v State of New York, 234 NY 309, 317 [1922]). Thus, "adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner" (id. at 316; accord Chaner v Calarco, 77 AD3d 1217, 1218 [3d Dept 2010], lv denied 16 NY3d 707 [2011]).
Applying those principles, the grandfather's 1963 permission continued until 2005 when defendant's father purported to reserve to himself a life estate in the disputed area in a recorded deed conveying his life estate in the eastern parcel [*3]to defendants. The reservation of the life estate granting defendant's father exclusive possession of the disputed area manifested for the first time a right hostile to plaintiff, providing her with a cause of action in ejectment (see RPAPL 631; Brand v Prince, 35 NY2d 634, 636 [1974]; Rundberg v Rundberg, 140 AD3d at 1462). Measured from 2005, the prescriptive period expired, and thus defendants' adverse title in the disputed area vested, in 2015.
Next, under the 2008 amendments to RPAPL article 5, "[a] claim of right means a reasonable basis for the belief that the property belongs to the adverse possessor or property owner, as the case may be" (RPAPL 501 [3]). Defendants satisfied their initial burden on this element by submitting tax maps dating back decades depicting the boundary between the parties' parcels as Shunpike Road with the disputed area as part of the eastern parcel. Defendants also supplied affidavits from multiple individuals indicating they believed the grandfather intended for the disputed area to be part of the eastern parcel, and that they understood the boundary between the western and eastern parcels to be Shunpike Road — in accord with the tax maps (see Calder v 731 Bergan, LLC, 83 AD3d 758, 759 [2d Dept 2011]). Even if, as plaintiff posits, defendants' belief in their ownership of the disputed area became unreasonable after learning in 2019 that the disputed area was part of the western parcel, the prescriptive period had already expired by then.
Defendants also satisfied their burden to submit proof of "acts sufficiently open to put a reasonably diligent owner on notice" of their adverse claim (RPAPL 512 [1]; accord RPAPL 522 [1]). With respect to defendant's father's actual possession, the 2005 deed was recorded, defendant's father used the warehouse for woodworking and car repairs five to six days per week, and he parked his cars on the surrounding cleared land. Defendant's father also hosted visitors in the warehouse and taught plaintiff's son electrical and other skills using equipment in the warehouse. After defendants took possession in 2011, they repaired, painted and leased the warehouse to tenants and tended to and leased the surrounding lands. Defendants also used the warehouse to store their boat and permitted defendant's stepson to use it as a workshop. Defendants also tried more than once to subdivide and sell the disputed area. In 2014, defendants appeared before the Town of Jackson Planning Board — of which plaintiff's husband was a member — with a plan to subdivide and sell the disputed area. Thereafter, they placed a "For Sale" sign in front of the warehouse in view of plaintiff's residence across Shunpike Road. Such acts demonstrate that defendant's father's and then defendants' possession of the disputed area was actual, open and notorious, exclusive and under a claim of right adverse to plaintiff from 2005 to 2015 (see RPAPL 501 [2]).
The burden therefore shifted to plaintiff to produce evidence demonstrating [*4]a triable issue of fact (see Bergmann v Spallane, 129 AD3d 1193, 1198 [3d Dept 2015]; McKeag v Finley, 93 AD3d 925, 928 [3d Dept 2012]; Ziegler v Serrano, 74 AD3d 1610, 1612 [3d Dept 2010], lv denied 15 NY3d 714 [2010]), which she failed to do. Plaintiff averred that she always knew she owned the disputed parcel and that defendants used it with her permission, and, in an affidavit, plaintiff's husband affirmed that plaintiff "has always stated to me that she owns the warehouse and surrounding land." Yet, plaintiff's proof does not raise a question of fact as to whether, between 2005 and 2015, she attempted to eject defendant's father or defendants, or that they "acknowledged that they did not have a claim of right" in the disputed area (Rundberg v Rundberg, 140 AD3d at 1462). Further, evidence that the brothers continued to share use of the warehouse from 2005 until plaintiff's father died in 2008 does not create questions of fact as to exclusivity. The business ended in 1993, plaintiff's father had deeded his interest in the western parcel to plaintiff in 1998, and defendant's father's "right to use [the disputed area] was not dependent upon the right of others to do so and the [disputed area] was not open to public use" (Levy v Kurpil, 168 AD2d 881, 883 [3d Dept 1990], lv denied 77 NY2d 808 [1991]; see Estate of Becker v Murtagh, 19 NY3d 75, 83 [2012]).
Plaintiff's remaining contentions respecting defendants' adverse possession counterclaim are either covered by the reasoning above or have been assessed and found to be without merit. In light of our conclusion, we need not reach the parties' other arguments.
Clark, J.P., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Defendant Debra L. Rich is married to defendant William Keith Rich.

Footnote 2: "In 2008, the adverse possession statute (RPAPL art 5) was amended in its entirety to, among other things, discourage people from claiming adverse possession over real property they know belongs to another with superior ownership rights. Among the changes, the Legislature defined the terms 'adverse possessor,' 'acquisition of title,' and 'claim of right[,'] and altered the requirements that must be made out where the adverse possession claim is not based on a written instrument" (Estate of Becker v Murtagh, 19 NY3d 75, 81 n 4 [2012] [citations omitted]).